PERKINS OIL CO. *v.* EBERHART.

*(Jackson.* June 22, 1901.)

1. BUILDING CONTRACT. *Construction of.*

Under a contract for erection of an oil mill, which binds the contractor, for the sum of $26,000, to furnish all materials and perform all the work "according to the plans and specifications (made part of contract), and foundations for presses, accumulators and engines to the amount of 120,000 brick—all in addition to that quantity to be $14 per 1,000 in Portland cement; $11.50 per 1,000 in Louisville cement"—he is entitled to additional compensation, at the prices stated, for all brick over the estimate of 120,000 used and laid in cement for "foundations for presses, accumulators, and engines;" but not on the 1,120,000 brick used, and laid in mortar, in construction of other parts of the mill, which would give him, extra, the unreasonable sum of $12,880. (*Post, pp. 411–422.*)

2. SAME. *Same.*

Where a building contract provides for the laying of the main body of the brick in lime mortar, and other portions in Portland and again other in Louisville cement, a change in the specifications allowing the use of the cheaper cement "in all brick work," excepting certain foundations and cappings, relates alone to the brick that are to be laid in cement under the original contract, and does not have the effect to require all brick used in the building to be laid in cement. (*Post, pp. 419–422.*)

3. SAME. *Effect of alterations.*

If a contractor sustains loss of materials, by reason of their being rendered unfit for use, on account of alterations made by the owner in the original plans and specifications, he may recover the amount of such loss from the owner. (*Post, pp. 424, 425.*)

Perkins Oil Co. *v.* Eberhart.

4. SAME. *Contractor's bondsmen not released by alterations of plans, when.*

   The surety of a contractor is not released from liability by reason of changes made by the owner in the original plans and specifications, where the contract, made part of his bond, provides for alterations on written order of the architect, and those made were not by enlarging the building or adding new ones, but in matters of detail, though adding more than one-tenth to the cost of the building. In such case, there is substantial compliance with the original plans and specifications. (*Post, pp. 429–432.*)

5. CONTRACT. *Rules of construction.*

   The chief concern of the Court in the construction of a contract is to ascertain the intention of the parties—the sense in which they understood their agreement. This intention is to be gathered from the four corners of the written instrument, read in the light of the surrounding circumstances. Its language controls, when plain and unambiguous. (*Post, pp. 415, 416.*)

   Cases cited: Polk *v.* Buchanan, 5 Sneed, 726; Barker *v.* Freeland, 91 Tenn., 116; Mills *v.* Faris, 12 Heis., 457; Nunnelly *v.* Warner Iron Co., 94 Tenn., 282.

6. DECREE. *Authorized by pleadings, when.*

   Under a bill filed against a contractor and his surety, and sub-contractors and materialmen claiming liens upon the property, by the owner of the property, to save multiplicity of suits and settle the rights of all the parties in a single decree, the owner may have decree against the contractor for any sum he may be compelled to pay in discharge of liens in excess of the contract price. (*Post, pp. 422–424.*)

7. CHANCERY PRACTICE. *Concurrent finding of Master and Chancellor.*

   Where the Master reports there is not sufficient evidence to fix the amount of a valid claim, and suggests another reference on the point, and the Chancellor concurs, but the party in interest asks no further reference, this Court can grant no relief. (*Post, pp. 425–427.*)

8. MECHANICS' LIEN. *Enforcible by cross-bill.*

   Where the owner, for the purpose of preventing multiplicity of suits and to settle the rights of all parties by a single decree,

files bill against a contractor and his surety, and also against numerous subcontractors and materialmen claiming liens on the property, the lien claimants may by cross bill, attaching the property, enforce their claims against same. (*Post, pp. 427, 428.*)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, Ch.

HENRY CRAFT and F. T. EDMONDSON for the oil company.

J. J. DUBOSE and MALONE & MALONE for Eberhart.

McALISTER, J. The defendant (Eberhart), as the result of competitive bidding, was awarded a contract for the construction of an oil mill, in the city of Memphis, for the Perkins Oil Co. The contract price for the work was $26,000. Eberhart, the contractor, executed a bond with the American Bonding & Trust Co., as surety, in the penalty of $7,000, for the faithful performance of the work. Toward the close of the work complications arose. Mechanics, laborers, and material men filed notices of liens upon complainants' property, and it was threatened with vexatious litigation and serious loss. Thereupon the present bill was filed by the Perkins

Oil Co. against Eberhart, the contractor, the American Bonding & Trust Co., his surety, and certain subcontractors and material men, to restrain them from prosecuting separate suits, and to give the Chancery Court jurisdiction of all matters involved. Answers and cross bills were filed by the subcontractors and material men, attaching the realty on which the mill was situated, and asking that their several statutory liens thereon be established. During the progress of the cause the claims of these subcontractors and material men were all paid, and are not now the subject of controversy. The defendant (Eberhart) also filed an answer and cross bill, claiming a balance due from the Perkins Oil Co., of $21,282.76. An attachment issued, and was levied on the property of the oil company. The bond company filed its answer, alleging that a number of changes in the plans and specifications were made during the progress of the building, and that the mill and seed house were erected, not upon the contract plans and specifications, as originally made, but upon entirely different plans and specifications, made and furnished long after the original contract was entered into; that it was bound only by the contract as entered into, and that as soon as the original contract was changed, and additional plans and specifications were furnished, additional obligations were imposed upon Eberhart, and that the bond company was relieved and discharged from any and all liability under its bond. It denied that it

was bound on its contract to any extent. It alleged that there was a large outlay of labor and a great amount of extra lumber and material, which had been ordered and prepared for the changes made, which increased the liability of Eberhart to a material extent, and that the bond company was thereby relieved from any obligations whatever under the original contract.

The Perkins Oil Co. answered the cross bill of Eberhart, in which it denied that it was indebted to him in any amount. There was a reference to the Master to state an account between the parties, who, upon the proof, found the sum of $7,117 to be due Eberhart. Exceptions to the report were filed by both sides, which were overruled by the Chancellor and the report confirmed, excepting an item of $500, which the Master reported in favor of Eberhart, but which the Chancellor disallowed, thus reducing the claim of Eberhart to $6,605.36. During the progress of the cause decrees for the sum of $9,795.91 were rendered against the property of the Perkins Oil Co., in favor of the various subcontractors and material men, which sum was fully paid off by the oil company. On final hearing, the Chancellor pronounced a judgment in favor of the Perkins Oil Co., and against Eberhart, for $3,190.55, the difference between $9,795.91, the sum which the oil company was required to pay to the several subcontractors and material men, to satisfy their liens upon the lands and buildings of the oil company,

and $6,605.36, the sum found to be due Eberhart, including all extras. The decree of $3,190.55 was rendered both against Eberhart and the American Bonding & Trust Co., surety on the bond as contractor. Eberhart and the trust company both appealed and have assigned errors.

On behalf of Eberhart the first assignment of error is that the Chancellor erred in his construction of article 1 of the contract between Eberhart and the oil company, which is in the words and figures following, viz.: "Article 1. The contractor, under the direction and to the satisfaction of A. H. D. Perkins, or his supervisor, acting for the purposes of this contract as agents of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings, prepared by the said owner for an oil mill, according to plans and specifications, and foundations for presses, accumulators, and engine, to the amount of one hundred and twenty thousand brick (120,000), all in addition to that quantity to be $14 per thousand in Portland cement, $11.50 per thousand in Louisville cement. All fire doors single, which drawings and specifications are identified by the signatures of the parties hereto."

It is said the learned Chancellor, in regard to this clause, held, in effect, that Eberhart was to be paid extra only for brick above the amount of 120,000, used in the foundations for presses, accu-

mulators, and engine, which said foundations for presses, accumulators, and engine did not require more than 120,000 brick, when, as a matter of law, the learned Chancellor should have so construed said contract as to allow Eberhart compensation for all brick furnished in the building of the entire oil mill above the amount of the 120,000 brick. The entire amount of brick furnished by Eberhart above said 120,000 brick, in the construction of the entire oil mill, is shown to be 1,120,000, the whole amount used being 1,240,000. The total sum thus claimed to be due Eberhart for brick furnished over and above 120,000, amounts to $12,880.

It is insisted by counsel for appellant that the interpretation of the contract is a matter of law, for the Court, and we cannot look beyond its four corners for light. It is a cardinal rule of construction that all instruments are to be expounded and to have effect given them according to the manifest intention of the parties, as apparent from the whole instrument or agreement, if not incompatible with established principles of law or policy. *Polk* v. *Buchanan*, 5 Sneed, 726. Again, it was said by the Court in *Barker* v. *Freeland*, 91 Tenn., 116: "It is an indisputable proposition that, when a contract is in writing and its meaning is plain and unambiguous, its interpretation is a matter of law, for the Court. But, when the writing is not plain and unambiguous, parol evidence is admissible to ascertain the situation and surrounding circumstances,

the nature and quality of the subject-matter,'' etc. The sole object of the rules and principles laid down for the exposition of contracts is to do justice to the parties by enforcing a performance of their agreement according to the sense in which they mutually understood it at the time. *Mills* v. *Farris*, 12 Heis., 457. In ascertaining the intention, the situation of the parties, the motives that led to the agreement, and the objects designed to be effected by it, may all be looked to by the Court. *Nunnelly* v. *Warner Iron Co.*, 94 Tenn., 282. It is also true, as contended by appellant's counsel, that, in cases of doubt, the instrument will be construed most strongly against the person who actually drew up the paper, or in whose behalf it was drawn.

With these fundamental principles in view, we now proceed to examine the contract. The building for the construction of which the contract was awarded to Eberhart was to be used by the Perkins Oil Co. for the purpose of manufacturing cotton-seed products. It was to consist of a seed shed, to be constructed mainly of wood, and a two-story machinery department, which was to be made exclusively of brick. The plans and specifications upon which the bids were invited covered the entire work to be done, excepting the brick work which was to constitute the foundations for the machinery, such as presses, accumulators, and its engine. These foundations were not included in the plans and specifications because, it is said, it was not definitely known

what character of machinery would be used, and, also, for the reason that the specifications for such foundations are always furnished by the manufacturers of the machinery. Hence it is shown that the bids were submitted by the contractors without any specifications before them for the brick foundation work. It was estimated that the foundation work would require 120,000 brick, and, hence, that estimate was included in the contract, but all brick used in excess of that quantity were to be charged extra.

The insistence, however, of Eberhart, is that he was to be paid extra for all brick used in the construction of the entire work, including both buildings, in excess of 120,000. The proof is that 1,240,000 brick were used in the buildings, and the contractor's claim is that he is entitled to be paid extra for 1,120,000 brick. This extra compensation would have amounted to $12,880, while the contract price for the entire work, excepting the machinery foundations, was only $26,000. Is it reasonable to suppose that the parties ever contemplated such a construction of the contract?

The contract stipulates that the contractor is to furnish *all* the material and perform all the work mentioned in the plans and specifications for an oil mill. The brick building would require at least 1,120,000 brick in its construction, and yet, according to the contractor's contention, the contract only obligates him to furnish 120,000 brick, and for all

23 r—27

over that quantity he was to be allowed extra compensation. But the context shows that the enumeration of 120,000 bricks in the contract was simply an estimate of the quantity that would be necessary in the machinery foundations, and, as such foundations must be laid in cement, and, for that reason, more expensive, it was provided that all brick used in excess of that amount should be paid extra, the price depending upon the quality of cement that might be used. As a matter of fact, only 120,000 brick were used in the machinery foundations, and the balance of the 1,120,000 brick for which Eberhart was claiming compensation were used in the building proper and were laid in common mortar. But the contract only allows extra compensation for brick laid in cement. All of the brick work, excepting the foundations for presses, accumulators, and engines, is set forth in the plans and specifications. It is inconceivable that a contractor who engages to furnish all the material for the construction of a brick building at a stipulated price should be entitled to extra compensation for the brick used in the structure.

The only reasonable construction of this contract, as we see it, is that the contractor was to be paid extra for all brick used in the machinery foundations in excess of 120,000. This was the understanding of all the competing contractors at the time the bid was awarded to Eberhart, and, so far as we can see, the latter made no contrary claim dur-

ing the progress of the work, but his whole conduct was inconsistent with such a contention. The record shows that when Eberhart first presented his bill for extras, under the reference in this cause, he did not include the 1,120,000 brick, and made no such claim. So that, whether the contract be interpreted from its face alone, or in view of all the surrounding circumstances, it is very evident that Eberhart contracted, for the sum of $26,000, to furnish all the material and construct the buildings called for by the plans and specifications, excepting the machinery foundations for presses, accumulators, and engines.

If the brick used in these foundations exceeded 120,000, the contractor was to be paid extra, but if not, this work was also included in the original contract. The Clerk and Master, in executing the order of reference, so construed it.

In addition to this, the fact that the foundations for the machinery were to be laid in Portland and Louisville cement, and not in common mortar, the compensation of $1¼ per thousand for Portland cement and $11.50 per thousand for Louisville cement, related alone to the foundations for presses, accumulators, and engines. If counsel for Eberhart is correct in his construction of this contract, then no provision whatever is made in the contract for the brick laid in common mortar, and yet, probably seven-eighths of the brick used in the building were laid in common mortar. Complainant's counsel, in

answer to this position, cites the following provisions of the contract, which he insists relate to brick other than those used in the foundations, to-wit: "Walls above the main floor to be laid in rich lime mortar, to within eight · courses of the top, when mortar must be used same as in foundation. All top walls in main building to be covered with Portland Cement, neatly finished after roof is on."

Counsel say: "It will thus be seen that the top eight courses of brick and the capping itself were to be practically the same as the foundations, and the rest of the brick above ground was to be in rich lime mortar. But we find that these specifications were changed by an addition, viz.: Louisville Black Diamond cement to be used, instead of Portland cement, in all brick work, except engine foundations and the capping or finishing touches on walls, which will be Portland."

"It will thus be seen," says learned counsel, "that by this important change in the specifications the foundations for the machinery and the capping were to be Portland cement as before, but that all brick work besides was to be finished in Louisville cement. Clearly, then, the intention of the parties, at the time the contract was executed, was that none of this work should be laid in ordinary mortar. All that not laid in Portland cement was to be laid in Louisville cement."

We have thus quoted, in full, the exact position of complainant's counsel on this subject. It is not

claimed that the brick in the main building, outside of the foundations, were actually laid in cement, nor is there any proof to that effect. Eberhart, in his cross bill, does not claim that the brick for which he is now asking extra compensation was laid in cement, nor does he testify that as matters of fact that all the brick work was laid in cement. The original specifications are clear upon that point, and afford us, with reasonable certainty, a basis upon which to determine about what proportion of the brick was to he laid in cement and what proportion in lime mortar. The provisions of the specifications upon this subject are as follows: "All foundations are to be hard, well-burned brick, and are to be laid in cement mortar. All mortar to be made of fresh, unslacked, Alabama lime, and sharp, washed, cleaned, and screened sand, and to be made ten days before using. Walls above main floor to be laid in rich lime mortar. The foundations for machinery, which will consume about 125,000 brick, to be laid in Eagle brand cement or its equal. Bids on machinery foundations to be made per thousand."

We are of opinion that the changes in the specifications, upon which complainant's counsel rely, relate only to the character of the cement to be used, and was not designed to affect the quantity of brick that should be laid in cement and the amount to be laid in common mortar. The modification of the specifications was simply intended to permit Louis-

ville cement, which was less expensive to be used in all brick work which the contract required to be laid in cement, instead of Portland cement, except in engine foundations, where Portland cement must still be used. The change, in our opinion, does not affect the quantity of brick at all. The Clerk and Master, in executing the order of reference, so construed the contract, and stated his account on this basis, thus disallowing the claim of Eberhart for extra compensation for 1,120,000 brick. The Chancellor so construed the contract and confirmed the report of the Master. We predicate nothing upon the concurrent findings of the Master and Chancellor upon the facts so ascertained, for the reason that the construction of the contract is matter of law for the Court. We, however, fully agree with the Chancellor in his interpretation of the contract.

It is insisted, however, that the decree against Eberhart for $3,190.55, was wholly unwarranted by the pleadings. It is said that in no pleading does the Perkins Oil Co. claim that Eberhart owes it anything or will owe it anything on final accounting. It is said that the bill was not filed to obtain decree against Eberhart, but that the object was to protect the company against a multiplicity of suits threatened by the various subcontractors and materialmen. Counsel is mistaken, however, in his assumption that no judgment was asked against Eberhart. The bill, after setting forth the complications about to arise from the threatened suits of the lien claimants,

states, viz.: "That when all of said claims have been presented to the Court, the Court will pass upon them in connection with all questions between complainant and defendant, Eberhart, and defendant, The American Bonding and Trust Co., so that in one decree and at one time the rights of all the parties may be fixed.

"If, by this proceeding, the Court shall adjudge any liability as against complainant, under the claims of the various defendants, which shall, together with the complainant's claim for damages, arising from the failure of defendant, Eberhart, to carry out his contract, exceed the balance now in complainant's hands, of the contract price, together with the amount due for extras, then, and in that event, complainant is advised it is entitled to a judgment for such amount, together with the amount of whatever expense it shall incur for Court costs, etc., against the defendant, The American Bonding and Trust Co., under the conditions and provisions of its bond hereinbefore set out."

The bill asks for an account and contains a prayer for general relief.

The American Bonding and Trust Co., as the surety of Eberhart for the faithful performance of the work, was made a party defendant, because complainant expected to recover a judgment against Eberhart and would look to the bond of the Trust Co. for indemnity. Moreover, it is shown by the correspondence in the record that whenever lien

claims were filed by contractors and materialmen against the property of the Perkins Oil Co., during the progress of the work, that company promptly notified the bonding company, thereby indicating that it expected to sustain a loss on the contract by reason of the enforcement of mechanic's lien, which Eberhart had failed to satisfy. So that we think it clear that the Perkins Oil Co., prior to the date of filing its bill, was apprehensive of sustaining a loss on this contract, and intended to look to Eberhart and the trust company. Moreover, the facts stated in the bill are sufficient, under the prayer for general relief, to have warranted the personal judgment against Eberhart and the bonding company.

The second assignment of error is, viz.: The learned Chancellor erred in holding that Eberhart was not entitled to recover from the Perkins Oil Co. the full value of the lumber and the various woodwork, which became useless to Eberhart because of changes in the plans and specifications made by the Perkins Oil Co. itself. The complainant having, by its own fault, caused these plans and specifications to be changed, the loss should fall upon it. In addition to this, the said lumber and woodwork was left with the complainant company, was retained in its possession, and used by its officers, agents, and servants. It should, therefore, be compelled to pay for what it took and used.

In support of this assignment, counsel for appellants states, viz.: In this assignment of error are

included the thirteenth exception of Eberhart to the report of the Clerk and Master, in which he claims $665.25; also the fourteenth exception, in which he claims $437; exception fifteen, in which he claims $159.60; exception eighteen, in which he claims $171.84; the twenty-first exception, in which he claims $65.32. All of these claims were disallowed.

·The total amount of these claims under these different exceptions is $1,499.09. We will state, as a general proposition, what is claimed in all of these exceptions. It is substantially this: The Perkins Oil Company, by contract with Eberhart, employed him to erect an oil mill for the company. In the erection of this mill certain plans and specifications were to be followed, and the parties signed a contract which made the plans and specifications a part thereof. Now, after the contract was made, the Perkins Oil Company, of its own accord, made many changes in the original plans and specifications. In changing these plans and specifications a great deal. of lumber, woodwork, etc., furnished by Eberhart, became utterly useless. For instance, he would order an eight-foot plank, and after it had come, the company would change the plans so that a ten-foot plank, instead of one of eight-foot dimensions, would be required, so the eight-foot plank would be thrown away and would then become a dead loss to Eberhart.

The Clerk and Master, in disposing of this matter, says in his report, viz.: "13. The Master, in

his report, intended to say something about the lumber left over on account of change of plans, but inadvertently failed to do so. It is impossible from the proof to ascertain just what amount of lumber was left on the ground, what was used by the Perkins Oil Co., and what is still there, and who is chargeable with what remains. Eberhart says he left there fifty or sixty thousand feet. He should have measured it, and been able to state exactly how many feet was left on the ground if he intended to charge for it, and in like manner the Perkins Oil Co. should have kept a strict account of lumber used by them (or better, not used any of it), if, as they contend, it belonged to Eberhart. Mr. Perkins says that they used some, probably, five or six thousand feet. Critchell also testifies that he used a good deal of it in work of building house for rope crossing, house to house cover conveyers, for gutters and fences, but he says he does not know how much. It would not do to charge the Perkins Oil Co. with all of this two by eight lumber, simply because it was not used in this particular place; it might have been used elsewhere, or hauled away, as the proof shows Eberhart did haul several loads of lumber away, as testified to by Critchell. The Master sees no way to arrive at the fact as to this item without a reference as to same. The Master has allowed for the difference between two by eight and two by ten rafters at a full price. Exception overruled.''

It will thus be seen that the Master found that the evidence was not sufficient to warrant him in sustaining these exceptions, and suggests a reference on this matter for further proof. Counsel for Eberhart, however, made no application for a reference, and the report of the Master was confirmed by the Court. The concurrent finding of the Master and Chancellor, in respect of this matter of fact, is conclusive, there being some evidence to support it.

The first assignment of error made on behalf of the bonding and trust company is that jurisdiction of the property, by attachment, for the assertion of mechanic's lien, cannot be acquired on cross bill, it appearing that the property was not brought before the Court by the original bill or attachments or other process issued under it. It appears that the claims of lienholders are all based upon cross bills and attachments issued thereunder. It is, then, insisted the attachments issued upon the prayer of the several cross bills being illegal, the bonding and trust company is not bound by any decree based thereon. The original bill in the cause was filed in the nature of a bill of interpleader against all the parties in interest, with a view of preventing a multiplicity of suits and settling the rights of all parties in this litigation.

The lien claimants were all made defendants, and filed answers and cross bills attaching the property of the Perkins Oil Co., with a view of asserting their several liens.

A mechanic's lien is enforced by attachment, either at law or in equity. The complainant could not, of course, bring the property before the Court by attachment under its original bill, and we can see no objection to the issuance of original attachments under the prayers of the cross bills. "A bill of this kind (cross bill) is usually brought either to obtain a necessary discovery of facts, or to bring before the Court new matter in aid of the defense to the original bill, or to obtain full relief for all parties, or some affirmative relief touching the matters of the original bill." Gibson's Suits in Chancery, Sec. 662. "A cross bill may be filed for relief whenever any question arises between the defendant and complainant, or between two defendants to the bill, that cannot be determined completely without a cross bill, or cross bills, to bring any matter in dispute completely before the Court, to be litigated by the proper parties and upon the proper proofs. In such cases it becomes necessary for some one or more of the defendants in the original bill to file a cross bill against the complainant and one or more of the other defendants to that bill, and thus to bring the litigated points fully before the Courts." Gibson's Suits in Chancery, Sec. 664; Story's Equity Pleadings, Sec. 392. It is well settled that, "When a cross bill seeks affirmative relief, it partakes of the nature of an original bill." Gibson's Suits in Chancery, Sec. 664; Story's Equity Pleadings, 398.

Hence we conclude that jurisdiction of the property was acquired by the attachments issued under the cross bills.

The American Bonding and Trust Co. assigns error to the decree below, viz.: (2) "The trial Court erred in rendering a decree against the American Bonding and Trust Co., for the reason that the changes made in the plans and specifications and the large amount of extra work required to be done was not made in accordance with the terms and conditions of the contract under which the bond was issued. First, in this, that the alterations made in the work shown and described by the drawings and specifications were not made upon the written order of the architect, and the value of the work added or omitted was not computed by the architect, and the amount of extra work so ascertained was not added to the contract price by the architect (article 3 of the contract, page 16 record, Vol. 1), and, second, that the changes made in the plans and specifications were so radical, and the burden imposed upon the contractor, Eberhart, was so much greater than those provided in the original contract, and under which the bond was made, that the bond company are entirely relieved from any obligation whatever under its bond."

Article 3 of the contract provides that: "No alterations shall be made in the work shown or described by the drawings and specifications except upon a written order of the architects, and, when

so made, the value of the work added or omitted shall be computed by the architect, and the amount so ascertained shall be added or deducted from the contract price.''

The bond provides that the written contract entered into is attached to the bond and made a part thereof, and it is insisted that .any changes or variations from the conditions in the contract affected the surety on the bond. It is claimed, on behalf of the bonding company, that the extras and changes made in the contract from the time it was executed until the building was completed amounted in value to $6,291.73. It is then stated that there is no proof' or statement made in the record by any witness that any of the changes in the work, as shown by the original drawings and specifications, were made upon the written order of the architect, nor is there any statement or proof that the value of the work added or omitted was computed by the architect, and the amount so ascertained added to or deducted from the contract ° price.

Counsel for appellants are mistaken in the assumption that the cost of the extra work, over and above the contract price, was $6,291.73. The Clerk and Master found, as a fact, that the total cost of the extra work was $3,090.29. The Chancellor concurred with the Master, and this finding of fact is, therefore, conclusive, there being evidence to support it.

Complainant is not seeking, in this action, to hold the bonding company for this extra work, but to recover the sum of $3,060.01, the total amount required to be paid out by the Perkins Oil Co., to mechanics and material men, over and above the contract price. The proof shows that the total amount actually paid out by the Perkins Oil Co. was $32,150.30. Deduct from this the sum of $3,090.29, the cost of the extra work, for which the oil company makes no claim against Eberhart, and there remains $29,060.01. But, under the original contract, the oil company was only liable for $26,000; hence it has been compelled to pay out the difference between $29,060.01 and $26,000, which is $3,000.01, and interest, in excess of its contract.

We do not find that any material alteration of the plans and specifications was made during the progress of the work. A number of expert building contractors and mechanics, after the completion of the work, made a thorough inspection of it, with the plans and specifications before them. Each of them testified on the trial that the buildings were constructed practically according to the plans and specifications, and that no material changes were made. The changes made were in respect to the details of the work, and there were no changes in the plans and specifications enlarging the buildings or adding new buildings.

The only change specifically referred to in the brief of counsel is that a wall was partially torn

down and certain braces were placed in the ventilators. We find, from Eberhart's deposition and the testimony of Thomson, that certain other changes were made, but we do not think they altered the original plans. The contract between the bonding company and the oil company must have a reasonable construction, and where it appears that the original plans and specifications have been substantially complied with, there is no ground for complaint.

The decree of the Chancellor is, in all respects, affirmed. The costs of the appeal will be paid by appellant.