T. A. MORRIS *v.* W. A. MESSER.*

(*Knoxville*. September Term, 1927.)

Opinion filed November 21, 1927.

1. OIL AND GAS. LEASES. CONSTRUCTION.

Owing to the peculiar nature of the mineral involved, oil and gas leases are construed, in cases of ambiguity, most strongly against the lessee and in favor of the lessor. (Post, p. 58.)

Citing: 40 C. J., 1053; Thornton's Law of Oil & Gas (4 Ed.), sec. 171, et seq.

2. OIL AND GAS. LEASES. INTEREST. VESTED RIGHT.

Although oil and gas leases vest no title in the lessee to the oil and gas in place before extraction, and give to the lessee only a contingent right of possession of the land for the purpose of exploration, after oil and gas is found, the right to retain possession for the purpose of producing becomes a vested right. (Post, p. 58.)

Citing: 40 C. J., 1061.

3. OIL AND GAS. TITLE.

After oil and gas is reduced to possession, title thereto as personalty becomes vested in the lessee. (Post, p. 58.)

Citing: 40 C. J., 1060, 1071.

4. OIL AND GAS. LEASES. RIGHTS OF PARTIES.

Such leases substantially give the lessee an option to enter upon the property and begin drilling within a stipulated period, and where so provided the option may be renewed from time to time by the payment of a stipulated rental. (Post, p. 58.)

Citing: 40 C. J., 1071; Contra: 40 C. J., 1072, 18 R. C. L., 1213; Huggins v. Daley, 99 Fed., 606, 48 L. R. A., 320.

5. OIL AND GAS. LEASES. CONSTRUCTION. FORFEITURE.

Where the terms of an oil and gas lease provide that the second party shall sink a test well on the described land within one year,

and if he fails to comply thereunto, the lease is to become void, if the well is not completed within said time "unless said party shall pay his rental for the said premises at the rate of one hundred cents per acre per year during the time drilling is delayed." Such a contract is sustained by a sufficient consideration and effect should be given to all of the provisions. (Post, p. 60.)

Citing: Guffey v. Smith, 237 U. S., 101, 59 L. Ed., 856; Northwestern Oil & Gas. Co. v. Branine, 175 Pac., 573, 3 A. L. R., 344; Rich v. Donaghey, 177 Pac., 86, 3 A. L. R., 352.

## 6. OIL AND GAS. LEASES. ALTERNATIVE PROVISIONS.

Where there is no alternative provision for keeping the lease alive by the payment of rent there is an implied covenant under a mineral lease, calling for a test of the property, to test in a reasonable time, but where there is such an alternative provision there is no room for inconsistent implication. (Post, p. 61.)

Citing: Petroleum Co. v. Coal, Coke, etc., Co., 89 Tenn. (5 Pick.), 381; Kachelmacher v. Laird et al., 92 Ohio St., 324, Anno. Cas. 1917E, 1117.

## 7. OIL AND GAS. LEASES. CONTRACT. CONSIDERATION. FRAUD.

In a suit to declare a forfeiture of a contract where there is no showing of fraud and nothing to make it appear that the contract rights were worth more than the one-dollar consideration stated therein, that sum is an adequate consideration to support the contract involved regardless of other things. (Post, p. 62.)

Citing: Stamper v. Venable, 117 Tenn. (9 Cates) 557.

## 8. OIL AND GAS. LEASE. DURATION. RENT.

If a lease allows the lessee one year in which to drill a well, with the right to extend the lease by payment of an annual rental, he does not have to pay the rent the first year. (Post, p. 63.)

Citing: Chadwick v. Standard Oil Co., 147 La., 668; Sullivent v. Clear Creek Oil & Gas Co., 138 Ark., 367; Thornton's Law of Oil & Gas (4 Ed.), sec. 167a.

---

*Headnotes 1. Mines and Minerals, 40 C. J., section 676; 2. Mines and Minerals, 40 C. J., section 688; 3. Mines and Minerals, 40 C. J., section 688; 4. Mines and Minerals, 40 C. J., section 663; 5. Mines and Minerals, 40 C. J., section 688; 6. Mines and Minerals, 40 C. J., section 663; 7. Mines and Minerals, 40 C. J., section 688.

## FROM MORGAN.

Appeal from the Chancery Court of Morgan County.—Hon. W. R. OFFICER, Judge.

JOHN A. JONES, for complainant.

W. Z. STRICKLIN, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to forfeit an oil lease. Complainant is the lessor and the defendant is an assignee of the lessee. The Chancellor decreed a forfeiture and the defendant has appealed.

The bill contained charges that complainant was overreached in the negotiation of the lease and averments of facts tending to show that the equities of the situation called for a forfeiture. All charges of fraud were denied as well as all charges indicating that a continuance of the lease would work any hardship upon the complainant. Neither complainant nor defendant took any proof, and the case went to the Chancellor for determination of the rights of the parties under the written lease, without extraneous circumstances to influence the decision. The case comes to us in the same plight.

The lease in the main conforms to one in common use in the oil States in unexplored territory, as appears from many reported decisions of the West Virginia, Pennsylvania, Ohio, Indiana, Illinois, Oklahoma, and Texas Courts. Oil production being a recent thing in Tennessee, we have no cases of our own involving a contract of this precise nature.

The lease recites that it was given in consideration of $1 paid to the lessor and of the covenants and agreements therein set forth. It contains the usual words of grant and demise; runs to the lessee, his successors and assigns, and describes the purpose for which it was given as that of drilling and operating for petroleum oil and gas. The term is stated at five years from date "and as much longer as oil and gas is found" on a tract of land described. The lessee covenants to deliver to the lessor one-eighth of all the oil produced on the premises and to pay $50 a year for gas if found in marketable quantities. The lease then continues:

"The second party (the lessee) agrees to sink a test well on the above described lands within one year, and if said party of the second part fails to comply hereunto this lease is to become void if well is not completed within said time, unless said party shall pay as rental for said premises at the rate of one hundred cents per acre per year during the time drilling is delayed; the second party may at their option pay any rental monthly which is agreed by the parties thereto as the consideration moving from the said second parties for their rights under this lease for the first five years named herein."

The lease also contains a surrender clause conferring upon party of the second part and his successors or assigns, the right at any time to surrender the lease for cancellation, upon which surrender all payments and liabilities shall cease and determine.

Said instrument bore date of January 31, 1925, and as before indicated ran from T. A. Morris to S. H. Jones. On November 14, 1925, Jones assigned his rights under the lease to W. A. Messer.

No test well was drilled up to January 28, 1926. On that day Messer sent to Jones, the complainant, a check

for $18.75, rents for February, March and April, 1926. The tract of land contained seventy-five acres, and at a rental of one hundred cents an acre per annum, the rent for three months would be $18.75. Messer's check was returned by the complainant. It will be observed from the quotation above made from the lease that the lessee has the option to pay any rental monthly, and by the check in question he tendered rent for three months in advance before the first year of the lease had expired.

*(1)* In the discussion of these so called leases of this character by the Courts of the oil States their conclusions have not been altogether harmonious. The Courts all agree or seem to agree that since the purpose of such leases is development and since, owing to the peculiar nature of the mineral, delay in drilling involves danger of loss to the owner of the land by drainage from surrounding wells, oil and gas leases are to be construed, in cases of ambiguity, most strongly against the lessee and in favor of the lessor. 40 C. J., 1053, and cases cited. Thornton's Law of Oil & Gas (4 Ed.), sec. 171, *et seq.*

*(2)* These contracts are of peculiar character. Although called leases they vest no title in the lessee to the oil and gas in place before extraction, and they give to the lessee only a contingent right of possession of the land for the purpose of exploration. "After oil or gas is found, however, the right to retain possession for the purpose of producing becomes a vested right under the terms of the lease, *(3)* and if the oil or gas is reduced to possession, title thereto as personalty becomes vested in the lessee." 40 C. J., 1060.

*(4)* The nature of the rights of the parties under these contracts is well stated in Corpus Juris in these words: ". . . such a lease substantially gives the lessee an option to enter upon the property and begin

drilling within the stipulated period, which option may be renewed from time to time by the payment of the stipulated rent, and likewise gives him the privilege of terminating the lease at any time; but it does not create a tenancy at will terminable at the option of the lessor." 40 C. J., 1071.

The principal contention of the complainant, as we gather, is that the real consideration for this lease was the obligation of the defendant or his assignee to drill the well and develop this property; that failing to drill a well within the year stipulated, the lease became void under its terms and that complainant was entitled thereupon to declare a forfeiture. Complainant gives little weight to the alternative provision of the lease authorizing the lessee to continue the lease by paying rental for the premises at the rate of one hundred cents per acre during the time drilling is delayed.

There are authorities which support this contention. In Ruling Case Law the following appears:

"Where an oil and gas lease contains a provision permitting the lessee to pay a stipulated rental for delay in beginning operations it is the general rule that the lessee cannot delay operations by paying the commutation money, but the lessor may refuse to accept the rent and require the lessee to begin operations within a reasonable time." 18 R. C. L., 1213.

Cases upon which the foregoing statement rests are noted in the work cited, and those cases and others to this effect are noted in 40 C. J., 1072. The leading case seems to be *Huggins* v. *Daley,* 99 Fed., 606, 48 L. R. A. 320. The reasoning is that the obligation to develop is the real consideration and *that* obligation the primary obligation of the contract and the undertaking to pay rent or a lump sum is a provision by way of penalty to

enforce the principal obligation rather than an alternative provision.

(5) Without going further into the authorities just noted, practically all of which may be rested on their peculiar facts, we think the best considered modern cases give effect to all the provisions of such a contract as we have before us, and hold that such a contract is sustained by a sufficient consideration.

The Supreme Court of the United States has considered at length an oil lease similar to the one in this case, and we quote the interpretation of such contract given by that Court as follows:

"The parties were competent to contract with each other, and entered into the lease because, in the circumstances, its provisions were satisfactory to them. Under its terms the cost of the drilling was to be borne by the lessee. If the undertaking was unsuccessful, he alone was to stand the loss, and if it was successful, the lessor was to share in the results by receiving substantial royalties, the reasonableness of which is not questioned. The consideration for the lease, viz., $1 paid to the lessor and the covenants and agreements of the lessee, cannot be pronounced unreasonable. Similar leases, resting upon a like consideration, often have been sustained in cases not distinguishable from this. The lease was to remain in force five years, and as much longer as oil or gas was being produced from the premises; in other words, it was to expire in five years unless oil or gas was produced within that time. The lessee expressly covenanted to drill a well within nine months or to pay a rental of 25 cents per acre per year, quarterly, in advance, for such time as the completion of the well was delayed beyond that period, the delay, of course, not to extend beyond the primary term of five years. The terms of the

covenant doubtless were suggested by the undeveloped condition of the district and by the expense and risk incident to exploring for oil and gas. They evidently were satisfactory to the lessor at the time, and the record discloses no reason for holding that, in the circumstances, they were unreasonably liberal to the lessee. Some criticism is directed against the reserved option to surrender, but it is difficult to perceive how it could be declared inequitable. If it was not exercised, the lessee would be bound by his covenants, and if exercised, the lessor would be free to deal with the premises as he chose. A surrender was not to affect any existing liability, but only to avoid those 'thereafter to accrue.' A like clause is in the subsequent lease, and, according to the evidence and several reported decisions, is of frequent occurrence in such instruments. We conclude that there is nothing in the terms of the lease which requires that equitable relief be withheld." *Guffey* v. *Smith,* 237 U. S., 101, 59 L. Ed., 856.

The Supreme Court of Oklahoma has given elaborate consideration to contracts of this nature in recent years, by reason of the large oil production in that State, and two recent decisions of that Court, throwing much light on the questions raised and sustaining all the terms of such lease contracts, are *Northwestern Oil & Gas. Co.* v. *Branine,* 175 Pac., 573, 3 A. L. R., 344, and *Rich* v. *Donaghey,* 177 Pac., 86, 3 A. L. R., 352. These cases are annotated in the American Law Reports where other authorities of like tenor are collected.

(6) Our own case of *Petroleum Co.* v. *Coal, Coke, etc., Co.,* 89 Tenn., 381, sustains the view that there is an implied covenant under a mineral lease, calling for a test of the property, to test in a reasonable time. That was, however, a coal lease containing no alternative pro-

vision for keeping the lease alive by payment of rent. Where there is such an alternative provision, there seems no room for inconsistent implication. On this subject the Supreme Court of Ohio has said:

"In the lease in this case there is an express stipulation for the payment of rental in lieu of drilling, and the option is thus given the lessee to drill or pay rental in accordance with the terms of the contract. Surely the clause making such provision, which is set out in full in the finding of facts, cannot be otherwise construed or interpreted. The rights of the parties must be determined from their own contract. Under the clearly expressed terms of the lease, if the lessee does not drill he may still continue the lease in force by payment of the stipulated rental. Such matter being covered by the express terms of the written contract, no implication can arise in relation thereto inconsistent with, or in opposition to, such plain provision of the written contract. An implied covenant can arise only when there is no expression on the subject." *Kachelmacher* v. *Laird et al.,* 92 Ohio St., 324, Anno. Cas. 1917E, 1117, and annotations.

(7) As heretofore stated, this case comes before us without proof. There is no showing of fraud and nothing to make it appear that the option to drill for oil on this land was worth more than $1. Such being the record $1 is an adequate consideration to support the contract involved regardless of other things. *Stamper* v. *Venable,* 117 Tenn., 557.

The Chancellor did not indicate the grounds of his decree. The complainant's counsel bases his argument to sustain the decree on want of consideration for the contract, and upon the further theory that a forfeiture ought to be declared upon failure to drill a well within one year, regardless of the alternative provision for the

continuation of the lease by payment of rent. What we have said is in our opinion a sufficient answer to these arguments made in behalf of complainant, and it is not necessary to undertake a further consideration of the rights of the parties under such a contract.

(8) It should be noted that if the lessee has a year in which to drill a well, with the right to extend the lease by payment of an annual rental, he does not have to pay rent the first year. *Chadwick* v. *Standard Oil Co.,* 147 La., 668; *Sullivent* v. *Clear Creek Oil & Gas Co.,* 138 Ark., 367; Thornton's Law of Oil & Gas (4 Ed.), sec. 167a.

It follows that the decree of the Chancellor must be reversed and this bill dismissed.