A. F. NEUBERT, et al., v. W. A. MESSER.

Eastern Section.    July 9, 1932.

Petition for Certiorari denied by Supreme Court, October 22, 1932.

J. W. Stone, of Harriman, and A. E. Mitchell, of Knoxville, for appellant.

D. O. Harris, of Harriman, for appellee.

OWEN, J. Complainants' bill was dismissed and they have appealed. The bill was filed for the purpose of canceling a lease made to the defendant. It was alleged that the lease contract was a cloud upon complainants' title. The bill was filed May 14, 1931.

The complainants are A. F. Neubert and wife, Alta Neubert, residents of Washington County, Tennessee, and Jessie L. Neubert and L. O. Ghormley and wife Annie Ghormley, residents of Knox County, Tennessee.

The defendant resides in Morgan County.

The complainants purchased about 300 acres of land, lying in one body, made up of a number of tracts, from A. P. Brown and wife Gertrude Brown, who at the time of the conveyance resided in Fulton County, Georgia. The land was purchased by complainants in 1930.

On the 15th day of November, 1925, A. P. Brown and wife leased their lands in Morgan County, afterwards conveyed to the complainants. The lease made by Brown and his wife to the defendant was duly acknowledged and recorded in the Register's office at Morgan County, November 28, 1925.

Complainants insisted that the defendant had never complied with the terms of said lease; that he had forfeited his rights under the terms of the lease.

The defendant answered admitting that the lease was for a term of one year, and as long thereafter as oil and gas is mined therefrom, or the payments are made as hereinafter provided in said lease.

Defendant alleged that he had performed his part of the lease in every respect and had made payments as provided in said lease, and had done every other act required by the terms of the lease, and that there had been no forfeiture; that he had paid the rent according to the terms of the contract to the lessor Brown; that Brown had waived any forfeiture if there had been a forfeiture; that the complainants knew of the lease when they purchased from Brown and knew that Brown had been accepting rents every year since the execution of the lease, and that defendant had tendered the rents to the complainants, but they refused to accept the rents.

The Chancellor held that the allegations of the bill were not sustained by the proof and dismissed complainants' bill. They prayed and perfected an appeal, and have assigned eleven errors. These eleven errors raise two propositions:

By assignments 1, 2, 7, 8, 9, 10 and 11, it is insisted that the Court erred in failing to hold that the complainant had the right to cancel the lease at the termination of any rent period.

The other assignments insist that the Court erred in finding that the defendant had complied with clause 6 of said lease, and in holding that the complainants did not have the right to cancel said lease for the reason that the defendant had not complied with the provisions of said lease.

This lease is what is called and generally known "A Gas & Oil Lease," and we quote from the material clauses of said lease as follows:

1. "For the consideration of Three Hundred Dollars, cash in hand paid, and further considerations hereinafter expressed, the first party has leased, granted, transferred, and assigned unto the second party, for the term of one year, and as long thereafter as oil or gas is mined or produced therefrom, or the payments are made as hereinafter provided, with the rights to use coal, wood, oil, gas or water therefrom and for all rights and privileges necessary or convenient for such operations, for the uses and purposes hereinafter stated, a certain tract or parcel of land, lying in the 5th Civil

District of Morgan County, State of Tennessee, and more particularly described as follows:

On the north by the lands of Hugh Jones, and C. T. Summer and Stump.

On the east by the lands of Griffin, Molun, Ramsey.

On the south by the lands of Evans land.

On the west by the lands of Hendren, and H. W. Summer, containing 300 acres, more or less.

2. The second party is granted the exclusive right of prospecting digging, and boring prospect holes, searching for and mining, manufacturing, storing, and preparing for market oil and gas in and upon said land; and the exclusive right of sinking wells, laying pipe lines and erecting manufacturing works and other works, buildings, and machinery necessary.''

The sixth clause of said lease, which it is claimed has been violated and the violation of which entitles the complainants to a forfeiture, is as follows:

''This lease shall become null and void and all rights cease and determine hereunder, unless, operations shall be commenced by the second party or his heirs, representatives or assigns to sink a well within twelve months from the date hereof upon the land hereby leased or upon land which has been or which may be leased to the second party within the following boundaries:

''In the 5th Civil District of Morgan County, Tennessee, north of Pilot Mountain to Deer Lodge Pike, west of C. N. O. & T. P. R. R. and this lease shall be void if such operations shall be abandoned by the second party after the same have been commenced and such abandonment, continue for one year thereafter, unless such operations by the second party are prevented by the act of God or the public enemy.''

The seventh clause in said lease, which is also under consideration, is as follows:

''In the event operations shall have been commenced by the second party, his heirs, representatives or assigns, within the time mentioned in clause six hereof to sink a well upon any of the lands within the boundaries mentioned in said clause six hereof and not upon the property hereby leased, then and in that event this lease shall be extended from year to year after the term of one year above granted upon the payment thereafter semi-annually by the second party, his heirs, representatives or assigns, to the first party of fifty cents per acre until oil or gas is produced upon said land by the second party as contemplated in Clause one hereof and after oil or gas is so produced this lease shall thenceforth continue in full force and effect as long as said oil or gas is so produced. Said payments for renewal and extension of said lease from year to year shall be made direct to

the first party or his legal representatives or assigns or deposited subject to his or their order in Citizens Bank & Trust Co. Bank at Wartburg, Tennessee, which payment or payments when so made or tendered by the second party shall fully and completely extend this lease from year to year and first party agrees to accept said rental payments when made and deliver receipts therefor to the second party.

"First party agrees to promptly notify second party of change of ownership and second party shall not be liable to any third parties until such notice has been served on second party.

"All other payments provided in this lease to be made shall be made in the same manner."

Brown notified the defendant on the 3rd of November, 1930, that he had conveyed the land, leased to defendant, to the complainants. After this notice, the complainants notified the Citizens Bank & Trust Company at Wartburg, Tennessee, where the rentals were to be paid or deposited by the defendant, not to accept any further payments from the defendant. The defendant deposited $300 promptly in the bank designated in the lease. The complainants refused to accept the $300.

It appears that during the period from the execution of the lease by Brown to the defendant and Brown's conveyance to the complainants, the defendant had sunk five wells within the 5th Civil District of Morgan County and west of the C. N. O. & T. P. R. R. He had sunk no well on the 300 acres formerly owned by Brown and conveyed by Brown to the complainants.

The proof shows that it takes from three to four months to sink an oil well. The complainants allege and insist that the defendant had not sunk a well within the boundaries set forth in clause six, which description is "In the 5th Civil District of Morgan County, Tennessee, north of Pilot Mountain to Deer Lodge Pike, west of C. N. O. & T. P. R. R." The clause, "north of Pilot Mountain to Deer Lodge Pike," is the clause over which this dispute has arisen. The wells were sunk in the 5th Civil District and west of the C. N. O. & T. P. R. R.

Pilot Mountain is a small station on said C. N. O. & T. P. R. R. At Pilot Mountain said railroad runs north and south. About three miles north of Pilot Mountain is a small station called Sunbright. Deer Lodge is a village about seven miles west of Pilot Mountain. A road runs from Sunbright in a southwesterly direction to Deer Lodge. Another public road runs from Pilot Mountain in a westerly direction and intersects with the road from Sunbright to Deer Lodge, east of Deer Lodge and west of Sunbright.

It is complainants' insistence that the defendant forfeited his lease when he did not sink a well south of the pike or road leading from

Sunbright to Deer Lodge. (Formerly the word "Pike" when applied to highways or roads conveyed the idea that the public paid to travel a pike. It carried with it the idea of turn-pike with toll gates. But for a few years prior to the execution of this lease and at the present time, the word "Pike," when applied to a highway, means any well graded and properly equipped public highway.)

To sustain complainants' contention we would have to say that Clause six intended that the defendant would drill a well in the 5th Civil District of Morgan County, west of the C. N. O. & T. P. R. R., north of Pilot Mountain and south of the Deer Lodge Pike. The village Sunbright is not used in the description, and the word "south" is not used.

The wells were drilled north of a line running west from Pilot Mountain to Deer Lodge. The wells were also drilled north of the public road by which the traveling public reached Deer Lodge from Pilot Mountain. Furthermore, Brown knew where the defendant was sinking wells. He made no complaint, and accepted his rent regularly without any complaint for four years after his lease to the defendant was executed.

It is insisted by appellants that the defendant forfeited this lease, that "In cases of doubt, the instrument will be construed most strongly against the person who drew up the paper or in whose behalf it was drawn." Perkins v. Eberhart, 107 Tenn., 416, 64 S. W., 760. That is a sound principle of law, however, "Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great if not controlling weight in determining its proper interpretation." 13 C. J., p. 546, sec. 517.

"The practical interpretation of a contract by the parties thereto is entitled to great, if not controlling influence." State ex rel. v. Vanderbilt University, 129 Tenn., 329, 164 S. W., 1151.

"The Courts will accept that construction put upon the contract by the parties themselves; and each party will be held estopped to contend that the contract meant anything other than that attributed to it by them by their conduct and words during its operation."

"Taking this view, it is unnecessary for us to decide whether, as an original proposition, this construction of the contract was correct as a matter of strict law." Bollis v. Produce Co., 3 Higgins, 488.

The defendant testified, without objection, that Brown, in accepting the annual rent, knew where the defendant was sinking wells, and Brown stated that he was perfectly satisfied with the place or land whereon the wells were being sunk.

It appears that Brown was content to receive the $300 per year from the defendant. He sought no forfeiture of the lease, and the

complainants knew where the wells were being sunk and Brown's attitude in the matter.

What really brought on this law suit might be inferred from the fact that the complainants were offered more per year to lease to some other party.

In the case of Morris v. Messer, 156 Tenn., 54, 299 S. W. 782, we find a very able and learned opinion by Mr. Chief Justice Greene, in which a lease for oil and gas was construed. That case originated in Morgan County, and we infer that it was the same defendant who is now before this court. And the lease therein construed is practically in effect the same character of lease that we are called on to consider.

Mr. Chief Justice Green, in his opinion in Morris v. Messer, supra, among other things held that "Where the terms of an oil and gas lease provide that the second party shall sink a test well on the described land within one year, and if he fails to comply thereunto, the lease is to become void, if the well is not completed within said time "unless said party shall pay his rental for the said premises at the rate of one hundred cents per acre per year during the time drilling is delayed." Such a contract is sustained by a sufficient consideration and effect should be given to all of the provisions." Citing: Guffey v. Smith, 237 U. S., 101, 59 L. Ed., 856; Northwestern Oil & Gas Co. v. Branine, 175 Pac., 573, 3 A. L. R., 344; Rich v. Donaghey, 177 Pac., 86, 3 A. L. R., 352.

In the case of Kachelmacher v. Laird et al., 92 Ohio St., 324, Anno. Cas., 1917E, 1117, in which a lease for oil rights was construed, the following from the Supreme Court's of Ohio opinion was quoted in Morris v. Messer, supra:

"In the lease in this case there is an express stipulation for the payment of rental in lieu of drilling, and the option is thus given the lessee to drill or pay rental in accordance with the terms of the contract. Surely the clause making such provision, which is set out in full in the finding of facts, cannot be otherwise construed or interpreted. The rights of the parties must be determined from their own contract. Under the clearly expressed terms of the lease, if the lessee does not drill he may still continue the lease in force by payment of the stipulated rental. Such matter being covered by the express terms of the written contract, no implication can arise in relation thereto, inconsistent with, or in opposition to, such plain provision of the written contract. An implied covenant can arise only when there is no expression on the subject."

We are of the opinion that the Chancellor was not in error in holding that the complainants had not sustained the allegations of their bill by a preponderance of the evidence. We find as a fact that Brown, the lessor, waived any forfeiture rights, if he had any under

Clause six of the lease, and having accepted the annual rent every year without complaint, the complainants stand with no higher rights than Brown would have if complainants had had full knowledge of all the facts relating to the lease and Brown's construction of it. "And when a forfeiture is waived, a Court will not assist a party later to declare a forfeiture." "Forfeitures are not favored by Courts of Equity." Indian Fork Coal Corporation v. Tennessee Mining & Mfg. Co., 4 Tenn. Appeals, 549.

"A recognition of the lessee's rights after he has failed to perform the condition, is a waiver of the forfeiture." Allen v. Dent, 72 Tenn., 676.

"It is well settled that the acceptance of subsequent rents shall constitute a waiver of a prior cause of forfeiture." Barasso v. Brewing Co., 1 Higgins, 670.

"Equity will refuse to forfeit an oil lease at the suit of the lessor because locations for operations are elsewhere than as prescribed by the lease, where, with knowledge thereof, he accepts without complaint his share of the production thereof." Horse Creek Coal Land Co. v. Trees, 75 W. Va., 559.

It results that the assignments of error are overruled. The decree of the lower court is affirmed. Execution will issue against the appellants and their sureties on appeal bond, for the costs of the cause including the appeal.

Heiskell and Senter, JJ., concur.