LEE A. HOWERTON *et ux., Appellees,* v. THE KANSAS NATURAL GAS COMPANY, *Appellant.*

No. 16,292.

SYLLABUS BY THE COURT.

1. MINERAL LEASE—*Cancellation for Insufficient Development— Adequacy of Remedy in Damages—Burden of Proof.* An oil-and-gas lease provided that the lessee should pay $50 per year for each gas well upon the leased premises during the time gas should be marketed therefrom. Adhering to the decision on a former hearing (*Howerton v. Gas Co.,* 81 Kan. 553) that the contract contemplated that other wells should be drilled with reasonable diligence to utilize this lease, it is further *held,* that the burden of proof is upon the plaintiff to show that a remedy in damages is not an adequate remedy for the failure of the lessee to proceed to drill other wells to protect the land from drainage and to obtain gas therefrom.

Howerton v. Gas Co.

2. —— *Same.* Having failed to make this showing, the decree for cancellation can not be sustained.

3. —— *Measure of Damages for Failure to Drill Wells.* The measure of damages is the sum of $50 per year for each well from the time it ought to have been drilled.

4. —— *Alternative Decree for Breach of Agreement by Lessee to Operate.* If it be determined that such a rule of damages can not be applied, an alternative decree may be entered, upon proper proof, providing that the defendant shall proceed, within a time to be fixed, as before indicated, to drill such wells as may be necessary to protect and develop the land and utilize the gas thereon, and pay for such wells as stipulated, or that the lease be canceled.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion on rehearing, filed May 7, 1910. (For first opinion see *Howerton v. Gas Co.,* 81 Kan. 553.) Reversed.

*Eugene Mackey,* and *John J. Jones,* for the appellant; *Jones & Reid,* and *Mackey & Sculley,* of counsel.

*Baxter D. McClain,* for the appellees.
*H. P. Farrelly,* and *T. R. Evans,* as *amici curiæ.*

The opinion of the court was delivered by

BENSON, J.: This action has been reconsidered by the court after argument upon a rehearing heretofore allowed. The facts are stated in the first opinion. (*Howerton v. Gas Co.,* 81 Kan. 553.)

Upon a careful consideration of the arguments made upon the rehearing and of the authorities the court is satisfied with the former opinion, except in one particular. It was held that there was no adequate remedy in damages for the default of the defendant. Upon a review of the findings of the district court, and of the evidence upon which the conclusions of law of that court were based, we now hold that the plaintiffs failed to show, as they were required to do in order to obtain equitable relief, that damages would not afford an ade-

quate remedy. The default consisted in the failure properly to develop the leased territory by drilling and operating a reasonable number of wells necessary for that purpose, and the failure to market gas from, and make the payments stipulated for, the well completed. No reason is shown why witnesses of experience, acquainted with the gas field, may not testify with reasonable accuracy as to the number of wells which should have been drilled on the leased land, both for protection from drainage by neighboring leaseholds and to obtain the gas underneath the land. No insurmountable obstacle to such proof is perceived by the court, and in the absence of evidence that it can not be produced it is concluded that the plaintiffs are not entitled to a remedy by forfeiture or cancellation of the lease. This conclusion is supported by *Harris v. The Ohio Oil Co.,* 57 Ohio St. 118, cited in the first opinion, and other adjudicated cases which have followed that decision. It needs no authority, however, to support the proposition that if there is an adequate remedy in damages no other relief can be obtained. The burden was upon the plaintiffs to show, either by the nature of the case or by proper evidence, that such damages could not be ascertained with reasonable certainty. Failing in this, the judgment of cancellation can not be sustained.

It should be observed that this is not a case where royalties payable in a share of the product are provided for, but is an agreement to pay $50 per annum for each gas well. The measure of damages, therefore, is the sum the plaintiffs have lost or may lose by the failure of the defendant to complete the number of producing wells reasonably necessary to develop the resources of the leased land and to protect its lines. When the plaintiffs shall have received $50 per year for each well from the time it should have been drilled they will have received the full compensation agreed

24—82 KAN.

upon in the lease.    Under the terms of the lease they have no share in the product of the wells, no concern as to the disposition which shall be made of that product, and the rules to be applied in leases where the lessor is given a royalty are not entirely applicable here.    Penalties and forfeitures are not favorites of the law, and if in this case the damages which the plaintiffs sustain from the breach of the contract can be ascertained with reasonable certainty no forfeiture can be adjudged.    It should also be observed that the plaintiffs, during all this long delay for which they now seek a forfeiture, made no complaint other than that the test well was leaking.    Some affirmative action ought at least to have been taken by them indicating a purpose to insist upon a forfeiture before summarily declaring it.

If it shall be ascertained upon another trial that such a rule can not be applied, an alternative decree may be entered, upon proper proof adduced to support it, providing that the defendant shall proceed within a reasonable time, fixed by the court, to drill wells and develop and protect the land leased, as before indicated, and pay the amounts stipulated in the lease for such wells, as well as for the well already completed, or, failing to do so, that the lease be canceled.    To this end proper amendments of the pleadings should be allowed if requested or found to be necessary.

The judgment is reversed and the cause remanded for further proceedings in accordance with these views.

PORTER, J. (concurring specially) :  I think the court should declare as a matter of law, from its knowledge of conditions in the oil-and-gas territory, that witnesses of experience can testify with reasonable accuracy to what number of wells would be required properly to develop the land embraced in the lease, including such wells as would reasonably be necessary to protect

Howerton v. Gas Co.

the land from drainage from other wells; and that, since judicial knowledge takes the place of proof, we should hold that the action to forfeit or cancel the lease can not be maintained because it appears that the plaintiffs have an adequate remedy in an action for damages.

BENSON, J. (dissenting) : A reëxamination of this case has confirmed the views expressed in the first opinion. I am unable to see how the rule of damages announced by the court can be applied to afford adequate relief. How many wells should be drilled, and when they should be drilled, will, I believe, result in mere conjecture, even after the most patient judicial inquiry. The plaintiffs had a right to expect an actual demonstration by a reasonably diligent use of the drill. The opinions of witnesses, however confidently given, must necessarily be speculations. The evidence shows that wells were drilled around this tract during the year before the trial, some of which were dry. Who can say how many wells to be drilled on this tract will produce gas in marketable quantities? The result of drilling each successive well may change the prospect and consequently vary the obligation of the lessee. If a new well or wells should diminish the pressure in the others, the prospect would be affected unfavorably; if that result should not follow, the prospect might be improved. If the operations should result in several dry wells, the situation would be again changed. In each contingency an estimate of the number reasonably necessary would be varied. If it be suggested that in case the probable result can not be foretold the plaintiffs have no equity to be preserved, the answer is that in just such cases equity furnishes the only adequate relief. The plaintiffs had sufficient faith in the resources of the land to contract for its development and encumber it with a lease. The defendant had sufficient faith to agree to make such

exploration and operate the wells for the benefit of both parties. That there is gas to be utilized is shown by the test well; but the defendant now refuses to go further, and when summoned to answer for its default stood entirely upon its supposed legal rights, claiming that it was justified under the contract in refusing to operate or pay for the one well or to drill others. The lease provides for its own indefinite extension if gas is found in paying quantities. Such gas has been found. Can the lessee delay work and defer payment indefinitely? It has pursued and is pursuing active operations in drilling gas wells on adjacent leases, with varying success, and other parties are also drilling wells in the same vicinity and marketing gas therefrom. The effect these operations may have upon this lease seems not to affect the views or conduct of the defendant, although the migratory character of oil and gas is well known and has been often referred to in judicial decisions and made the basis of requirements for prompt action.

The right of the plaintiffs to reasonable returns from their property under this lease is disregarded, and no promise is given to proceed. In this situation the remarks of the Pennsylvania supreme court in *Munroe v. Armstrong,* 96 Pa. St. 307, is pertinent, viz., that the lessee is "bound to operate or quit." (Page 310.) While the terms of the lease referred to in that case were different from the one now under consideration, in view of the obligation of the parties here, as interpreted by the court, the foregoing language seems applicable. The alternative decree provided for will, I fear, be found difficult to frame or to enforce, and may only serve to perpetuate litigation. It is hoped, however, that it will be the means of administering justice. in case that end is not reached by an award of damages—which seems to the writer improbable.

Mr. Justice GRAVES concurs in this dissent.