## BENEDUM–TREES OIL CO. v. DAVIS et al.

### Nos. 7930, 7931.

Circuit Court of Appeals, Sixth Circuit.

Nov. 8, 1939.

982

J. W. Stone, of Harriman, Tenn., and R. S. Marriner, of Washington, Pa. (Mae R. Stricklin, of Wartburg, Tenn., J. W. Stone, of Harriman, Tenn., R. S. Marriner, of Washington, Pa., and Hughett & Hughett, of Louisville, Ky., on the brief), for appellant.

Joe C. Thomason, of Knoxville, Tenn., for appellees.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Oil and gas leases covering 200 and 97 acres, respectively, of lands in Morgan County, Tennessee, are involved in these appeals. The disputed points are whether the terms of the leases have expired or are still current.

On December 6, 1929, Gran Davis and John W. Hall, appellees in No. 7930, and fee simple owners of the lands in question, granted, demised and leased to the appellant, Benedum-Trees Oil Company, for the purpose of mining, operating for oil and gas and laying pipe lines, building tanks, power stations and structures thereon to produce, save and store oil and gas, a certain tract of land in Morgan County, Tennessee, containing 200 acres. The lease was for a term of five years and "as long thereafter as oil or gas, or either of them, is produced from the land by the Lessee."

The lessee agreed to deliver to the lessors, free of cost, in pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved

from the leased premises and to pay to the lessors in quarterly payments, $200 annually for gas from each well where gas only was found while being used off the premises. The lessors were to have the privilege of obtaining without cost from any such well, gas for stoves and all inside lights in principal dwelling house on said land by making their own connection with the wells at their own risk and expense the appliances used, subject to approval of lessee. The lease also provided that if no well was commenced on the land on or before December 16, 1930, it would terminate unless on or before that date the lessee should pay or tender to the lessors $200 which would operate as rental and extend the lease twelve months. It also provided that the lessee could at any time remove all machinery and fixtures placed on the premises including the right to draw and remove casing and to cancel and surrender the lease to the lessors.

Within the time limit of the contract the lessee completed a well which produced gas but no oil. No market was available for the gas and the lessee capped the well in which condition it has since remained.

The lessee expended approximately $8,400 in drilling and shutting in the well. On October 21, 1935, the lessors notified the lessee that the lease had expired by its terms. After this notice, the date not shown in the record, appellees granted, demised, re-leased and let the premises to the appellee Ross H. Williams for the same purposes as the original lease and for a consideration of $200 and minimum royalties of $100 per annum.

On May 17, 1930, appellee E. W. Sedman, in No. 7931, owner in fee, granted, demised and leased to appellant, Benedum-Trees Oil Company, for the purpose of mining, operating for oil and gas and laying pipe lines, building tanks, power stations and structures thereon to produce, save and store oil and gas, a certain tract of land in Morgan County, Tennessee, containing 97 acres. This lease was for one year with which exception it was identical in terms with the one in No. 7930. A well was completed on it in September, 1930, also producing gas but no oil and at a cost of $5,000. It was also capped and has since so remained.

Sedman, in lieu of obtaining gas for his dwelling under the terms of the original lease, has since February 28, 1931, been furnished, free of cost, gas from a lease owned by appellant on the adjoining lands of F. S. Anderson.

On October 19, 1935, without previous notice to appellant, Sedman re-leased the premises to appellee Ross H. Williams for the same purpose and for a consideration of $100 and the payment of minimum annual royalties of $100.

It was provided in this lease that should any question arise as to its legality, appellee Sedman would institute legal proceedings to clear the title, the expense thereof to be borne by appellee Ross Williams.

After Williams had procured the leases, he entered on the premises, removed appellant's locks from the capped wells, substituted his own and placed on the fence around them signs "No trespassing, Ross H. Williams."

Appellant instituted these actions to quiet its title to the premises and the lower court on final hearing dismissed the petition in each case, hence these appeals.

Appellant insists that by going upon the properties and drilling wells producing gas in paying quantities, it has a vested interest therein of which it can be divested only by a showing that it had negligently or fraudulently refused to market the gas.

The rule is applicable to the leases in question that they must be interpreted reasonably to give effect to the plain intention of the parties and construed to confer substantial rights on both lessor and lessee so as not to reduce them to mere nudum pactums. In construing the contracts to ascertain the meaning of each particular part, the intention of the parties deduced from the whole of the instruments is the controlling factor and in ascertaining intent, the nature of the agreements, the situation of the parties and the objects in view will be given due weight. Tennessee Oil, Gas & Mineral Company v. Brown, 6 Cir., 131 F. 696. Generally, all leases of land for the exploration and development of minerals are executed with the expectation and upon the condition, either express or implied, that the land will be developed for such a purpose and where the parties have not fully covered the subject of delay by rental provisions, the lessee's rights terminate upon his nonperformance of the conditions. Habermel v. Mong, 6 Cir., 31 F.2d 822, 67 A.L.R. 216.

Where land has been developed under a mineral lease, as here, and oil or gas produced, the lessee has a vested leasehold

estate in the leased premises; prior thereto his rights were inchoate. Morris v. Messer, 156 Tenn. 54, 299 S.W. 782. Where the right is inchoate, courts of equity quickly enforce forfeitures for failure of the lessee to comply substantially with the express or implied conditions of the lease. Where rights have vested, as here, leases will not terminate except pursuant to an express or implied condition. An implied condition may be inseparably annexed to a grant from its essence and constitution, although no condition be expressed in words. Petroleum Company v. Coal, Coke & Manufacturing Company, 89 Tenn. 381, 18 S.W. 65; Logan Natural Gas & Fuel Company v. Great Southern Oil & Gas Company, 6 Cir., 126 F. 623.

In determining whether a condition is to be implied, it is important to note that the substantial consideration which moves a grantor to execute a lease for the exploration of his lands for minerals is the hope of profits or royalties if oil or gas is discovered. Huggins v. Daley, 4 Cir., 99 F. 606, 48 L.R.A. 320.

The oil and gas leases here in question provided, no remuneration to the lessors, exclusive of gas used in their dwellings except that the mineral be marketed from the premises. Under such circumstances, the requirement is implied that the lessee would develop the property and dispose of the gas off of the premises within a reasonable time, although the only result of delay might be the postponement of profits or royalties, the latter implication being hardly justified when the leases must be construed with reference to the known characteristics of the vagrant habits of gas under the influence of pressure of superincumbent rocks and development at a considerable distance from its place of discovery. Brewster v. Lanyon Zinc Company, 8 Cir., 140 F. 801.

The duty to develop the property and market the mineral upon the discovery of oil or gas in paying quantities is not to be regarded as a mere implied covenant, but in cases like the ones here where practically the whole consideration to the lessors must depend upon the implied undertaking, it is to be treated as a condition subsequent and on lessees' failure to do so, its grant ended with a reverter and right of re-entry to the grantors. Lumsden v. Payne, 120 Tenn. 407, 114 S.W. 483, 21 L.R.A.,N.S., 605.

Conditions subsequent are not ordinarily favored because they tend to delay the vesting of estates and in some cases rigorous exaction of them is a species of unconscionable claim. Accordingly, equity frowns on their enforcement and usually relegates their owners to relief at law by way of damages but where no such remedy is available and it is against equity to permit a lessee to assert his title longer, it will be brought to an end. Hutchinson v. McCue, 4 Cir., 101 F.2d 111; Brewster v. Lanyon Zinc Company, supra; Big Six Development Company v. Mitchell, 8 Cir., 138 F. 279, 1 L.R.A.,N.S., 332.

Where the only substantial benefit accruing to a lessor from a lease is rental when gas is produced and marketed, inability of the lessee to do so after a reasonable time will not relieve him from his implied obligation and will not avoid a termination even if good faith be present.

The leases here in question were for five and one years respectively and "as long thereafter as oil or gas or either of them is produced from the land by the lessee." There is absent from them the exact language that gas or oil must be produced in "paying quantities." However, in arriving at the intent of the parties, this is implied because they contracted with the end in view that the business would be profitable to both lessor and lessee. The latter may have realized a gain by retaining the leases for speculation. The former could receive no benefit from them except by marketing gas from the premises. Eastern Oil Company v. Coulehan, 65 W. Va. 531, 64 S.E. 836; McGraw Oil & Gas Company v. Kennedy, 65 W.Va. 595, 64 S.E. 1027, 28 L.R.A.,N.S., 959; Warfield Natural Gas Company v. Allen, 248 Ky. 646, 59 S.W.2d 534, 91 A.L.R. 890.

The term "paying quantities" involves not only the amount of production, but also the ability to market the product at a profit.

A gas well with small production located in a field with pipe line facilities might be in paying quantities, where conversely a well with large production remote from pipe line connections and from points of consumption would not produce in such quantities.

Production in paying quantities is not shown except where the well in conjunction with those adjacent or in the same

field would justify the construction of transportation facilities and a sale to consumers for a sum sufficient to yield a reasonable return over and above the expenses of production and transportation. Hanks v. Magnolia Petroleum Company, Tex.Civ. App., 14 S.W.2d 348.

The record in the case at bar shows that because of the location of the wells on the lands covered by the leases in conjunction with adjacent developed territory and their inaccessibility to a market, neither produced gas in paying quantities at any time. Union Gas & Oil Company v. Adkins, 6 Cir., 278 F. 854; Barbour, Stedman & Co. v. Tompkins, 81 W.Va. 116, 93 S.E. 1038, L.R.A.1918B, 365; Daughetee v. Ohio Oil Company, 151 Ill.App. 102; Osburn v. Finkelstein, 189 Ind. 90, 126 N.E. 11. The record shows that more than nine years have elapsed since the well on each of the leases here in question was drilled and capped and during this period none of the lessors have received any rentals for the use and occupation of their properties. The record is replete with evidence that for more than nine years the lessees have made fruitless efforts to get a pipe line built to the wells here in question and to those adjacent. No way is pointed out by the appellant by which appellee-lessors under these leases may obtain any return for the use of their premises and according to its contention the leases here involved could be perpetual. Urpman v. Lowther Oil Company, 53 W.Va. 501, 44 S.E. 433, 97 Am.St.Rep. 1027.

The appellant in this case has no equity to support its position and if its contentions were upheld, the court would lend its aid to the obstruction and prevention of the development of the mineral resources of the state.

Gas leases are sometimes retained for speculative purposes, after the cessation of exploration and the failure within a reasonable time to find a market for the mineral. Sauder v. Mid-Continent Petroleum Corporation, 292 U.S. 272, 282, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454.

In most cases, as in the case of J. B. Gathright Land Co. v. Kentucky-West Virginia Gas Co., 6 Cir., 65 F.2d 907, the lessor is protected by the payment of minimum rentals or royalties but where no such provision is made in the lease nor any payments made, its termination is implied after a reasonable time and equity ends such contracts for non-development or unreasonable delay in finding a market. White v. Green River Gas Co., 6 Cir., 8 F.2d 261. This is essential to private and public interests in relation to the use and alienation of property. Munroe v. Armstrong, 96 Pa. 307. The conduct of appellant has been in opposition to the spirit of the contracts between it and the lessees and the object and purposes which brought them into existence. We have no right to ignore the essence and destroy the life of the agreement between the parties. Genet v. President, etc., Delaware & H. Canal Company, 136 N.Y. 593, 32 N.E. 1078, 19 L.R.A. 127.

The only consideration moving to the lessors for the right which they gave to the lessee to explore and procure minerals on their lands was the royalty on the oil to be found and the fixed compensation for each well if gas should be found and utilized off the premises, together with sufficient gas to heat and light the principal dwelling on the premises. If no wells were drilled or no sale made of the product, no possible benefit except the domestic use of the gas could inure to the lessors for the exclusive rights they had given the lessees.

We are of the opinion that because of the long delay in finding a market for the gas, the leases terminated. Charleston, S.C., Mining & Manufacturing Company v. American Agr. Chemical Company, 126 Tenn. 18, 150 S.W. 1143; American Wholesale Corporation v. F. & S. Oil & Gas Company, 242 Ky. 356, 46 S.W.2d 498. The agreements, not being binding obligations at the time lessors relet the premises to the appellee Ross H. Williams, the appellant is not entitled to relief. The rule laid down in Leeper v. Lemon G. Neely Co., 6 Cir., 293 F. 967, 971, that before a lease can be terminated by the lessor for failure to develop, notice must be given lessee, is inapplicable here. Such notice or demand is unnecessary where termination of the lease may be inferred from the fact the lessee has been in default for an unreasonable time or has intentionally breached the express or implied obligations of the contract. American Wholesale Corporation v. F. & S. Oil & Gas Company, supra; Ison v. Edra Lee Oil & Gas Company, 241 Ky. 754, 45 S.W.2d 3. Many cases are cited by counsel involving the application of numerous principles of law to the rights of parties growing out of varying forms of oil and gas leases, but it would be of no benefit to discuss them.

Each turns on its peculiar facts and unique provisions. The decrees of the District Court are affirmed.