The SUPERIOR OIL COMPANY, a Nevada Corporation, and Petroleum, Inc., a Kansas Corporation, Appellants,

v.

DEVON CORPORATION, an Oklahoma Corporation, Miller-Christensen, a partnership, Gear Drilling Company, a Colorado Corporation, Falco, Inc. of Delaware, a Delaware Corporation, Camberly Corporation, a Colorado Corporation, Schuler-Olsen Ranches, Inc., a Nebraska Corporation, Chris L. Christensen, Jr., Arthur T. Olsen, Sharen Olsen, Mary Louise Schuler, Darrel D. Schuler, Harold C. Olsen, Grace L. Olsen, and the Estate of Velma Olsen Crampton, deceased, by and through its executrix, Mary Louise Schuler, Appellees.

No. 78–1760.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1979.

Decided July 30, 1979.

Rehearing Denied Aug. 21, 1979.

Robert C. Hawley, of Ireland, Stapleton & Pryor, Denver, Colo., for appellant; Kirk B. Holleyman, Gretchen A. VanderWerf, Denver, Colo., W. B. Wagner, Jr., and Louis O. Satterfield, Jr., of The Superior Oil Co., Houston, Tex., and Frederick S. Cassman and Frank F. Pospishil, of Abrahams, Kaslow & Cassman, Omaha, Neb., on brief.

Thomas C. McKee, of Clanahan, Tanner, Downing & Knowlton, Denver, Colo., for appellees; David C. Knowlton, Denver, Colo., on brief.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* Chief Judge.

BENSON, Chief Judge.

This is an appeal from an order and judgment of the district court cancelling an oil and gas lease for breach of an implied covenant to further develop the lease, and from a Rule 41(b) dismissal of some of the defendants in the action.

In 1949 Harlen C. and Velma R. Olsen executed an oil and gas lease in favor of plaintiff Superior Oil Company (Superior) covering 3,440 acres of land in Banner County, Nebraska. The lease was recorded in the office of the Register of Deeds of Banner County. The primary term of the lease was ten years and "as long thereafter as oil, gas, . . . or any of the products covered by this lease is or can be produced." Oil was discovered and produced on the leasehold within the primary term. In 1958, Superior assigned part of its interest in the lease to Lark Oil Company, which in turn made an assignment to plaintiff Petroleum, Inc. (Petroleum).

In 1961, that part of the Superior leasehold on which oil was being produced was unitized into the Willson Ranch Field "J" Sand Unit (Willson Ranch Unit).[1]

After 1961, there was no further drilling by Superior or its assignees on the tracts covered by the Superior lease. In February 1976 the successors of the original lessors, hereinafter referred to as the Schuler-Olsens, executed oil and gas leases to Chris L. Christensen, Jr., on certain tracts that were subject to the prior Superior lease. An oil well was successfully completed in February 1977.

On June 30, 1977, Superior and Petroleum filed this action naming as defendants the Schuler-Olsens and the lessee and assignees under the 1976 top leases, hereinafter referred to as the working interest defendants. Plaintiffs alleged that the Schuler-Olsens breached their contract with plaintiffs by executing the top leases and that the working interest defendants were trespassers and converters. It was also alleged that the 1977 well was draining oil from the remaining portions of the Superior lease. Plaintiffs sought injunctive relief, an accounting, and a decree quieting title to the leasehold.

In their amended answer and counterclaim, the Schuler-Olsens affirmatively alleged that plaintiffs had failed to perform the implied covenants of the lease and had abandoned the lease. They sought cancellation of the Superior lease for plaintiffs' breach of the implied covenant of further development. The answer of the working interest defendants was not included in the designated record on appeal. The case was bifurcated and a court trial was had solely on the liability issue.

* PAUL BENSON, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Willson Ranch Unitization Agreement was executed on July 1, 1961.

A review of the district court's memorandum opinion [2] will be helpful in understanding and disposing of the issues raised on appeal.

We note the district court found there was no dispute as to the validity of the Superior lease during its primary term, and there was no dispute that there was production in paying quantities on a portion of the leasehold prior to the expiration of the primary term, but that an affidavit of production had not been filed prior to the expiration of the primary term of the lease.[3] The court further found that production in paying quantities had continued to "the present time," but there were no drilling or farmouts after 1961 on the portion of the Superior lease that was outside of the Willson Ranch Unit.

The district court noted that the evidence indicated the Schuler-Olsens' royalty interest from that portion of the Superior leasehold included in the Willson Ranch Unit over the period from 1961 through 1976 totalled 103,000 barrels of oil with a value of $313,000.00, and during the first nine months of 1977 the royalty income to the Schuler-Olsens from the Unit ranged from $530.00 to $630.00 per month. The court further found that the Schuler-Olsens' predecessors in interest had consented to the unitization agreement.

The court found that the Schuler-Olsens were not sophisticated in oil and gas matters but were recipients of royalty payments from sources of production located on various leaseholds encompassing approximately 20,000 acres of land in western Nebraska. The court further found that the Schuler-Olsens had no actual knowledge of the Superior lease and in February 1976 they granted a total of six oil and gas leases to Chris L. Christensen, Jr., one of the working interest defendants, on tracts of land, all within a single section, covered by the 1949 Superior lease. The court found that Christensen had conducted a title search, had obtained an attorney's title opinion and had concluded that Superior's lease was not held by production. Christensen combined with other working interest defendants and brought in a producing well in February 1977.

■ The court held that as between Superior and the Schuler-Olsens the express terms of the 1949 lease had not been breached and that neither the failure to file an affidavit of production nor the subsequent unitization agreement altered the lessor-lessee contractual relationship between Superior and the Schuler-Olsens. The court concluded that it "must find the Schuler-Olsens liable for their execution of the Christensen 'top leases' unless Superior and Petroleum, Inc. violated the implied covenant to further develop prior to February of 1976." 458 F.Supp. at 1071. The court then concluded that Superior had failed to meet the standards required of a prudent operator and that prior to February 1976 [4] it had breached the implied covenant to further develop. The court held that on the record in the case an adjudication of breach of the implied covenant to further develop was not barred by the failure of the lessor to demand further drilling,[5] and ordered

---

2. *Superior Oil Company v. Devon Corp.*, 458 F.Supp. 1063 (D.Neb.1978). The discussion of the district court's findings and conclusions is not set out here in the same sequence in which they appear in the memorandum opinion of the district court.

3. Neb.Rev.Stat. § 57–208 (Reissue 1974) provides in general that where production has been obtained, the filing and recording of an affidavit of production in the Register of Deeds office is notice to the public of the existence and continuing validity of the lease. The statute is set out in another part of this opinion.

4. The date the Schuler-Olsens leased a portion of the premises covered by the Superior lease to Christensen.

5. Implicit in the holding is a finding that no demand had been made. The Schuler-Olsens did send a notice of forfeiture to plaintiffs after the completion of the oil well in 1977, pursuant to Neb.Rev.Stat. § 57–202. This notice, which is required by Nebraska statutes as a procedural prerequisite to cancellation of an oil and gas lease, did not serve as notice of the breach of the implied covenant to further develop and demand to commence further development. The notice given was inconsistent with and precluded further development by plaintiffs.

that portion of the Superior lease outside the Willson Ranch Unit cancelled unconditionally as of a time preceding the execution of the Christensen leases. It then dismissed plaintiffs' claim against the working interest defendants.

On appeal plaintiffs contend that the district court erred in five respects: (1) the finding that the implied covenant of further development had been breached was clearly erroneous; (2) it was error to hold that no prior demand by the Schuler-Olsens was necessary in order to obtain a cancellation of the Superior lease; (3) it was error to retroactively terminate the Superior lease as to lands outside the Willson Ranch Unit; (4) it was error to grant the Schuler-Olsens equitable relief in the form of an unconditional cancellation of the Superior lease outside the Willson Ranch Unit; and (5) it was error to grant the Rule 41(b) motion to dismiss of the working interest defendants.

We reverse the cancellation of the Superior lease and the dismissal of the working interest defendants, and do not reach plaintiffs' remaining specifications of error.

## I. The Implied Covenant To Further Develop.

■ In the field of oil and gas litigation a principle of law has arisen which incorporates in every oil and gas lease an implied covenant to further develop. The implied covenant becomes applicable only after production is obtained, and the life of the lease by its terms has been extended by reason of the production.[6] Before production is obtained, the lease remains in effect for the primary term if delay rental payments are made as required. After production is obtained, the implied covenant of further development requires the lessee to act with reasonable diligence in developing the lease as would a reasonable and prudent

operator under similar circumstances, having due regard for the mutual interests of both lessor and lessee. Concomitant with the duty on the part of the lessee to further develop the lease is a reasonable expectation of profit for the lessee. The reasonable expectation of profit for the lessor is not determinative of whether the lessee has complied with the implied covenant to further develop, for the lessor's royalty interest is not a costbearing interest. Any development will thus redound to the benefit of a lessor. The lessee bears the cost of development, and it is to his expectation of reasonable profit that the court must look in applying the reasonable and prudent operator standard. *Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934); *Trust Co. of Chicago v. Samedan Oil Corp.*, 192 F.2d 282 (10th Cir. 1951); *Brewster v. Lanyon Zinc Co.*, 140 F. 801 (8th Cir. 1905); *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684 (1959); *McMahan v. Boggess*, 302 S.W.2d 592 (Ky. 1957).[7]

■ In this diversity action the law of Nebraska is controlling. There do not appear to be any Nebraska cases applying the implied covenant to further develop to oil and gas leases. In *George v. Jones*, 168 Neb. 149, 95 N.W.2d 609 (1959), however, the Nebraska Supreme Court held that there was an implied covenant in a gravel lease that the lessee would work the mine as it would be usually worked under the surrounding circumstances by an operator acting with ordinary diligence, for the advantage of both lessor and lessee. 95 N.W.2d at 616–17. The rule applied by the Nebraska Supreme Court is essentially the same as that applied by other jurisdictions in regard to oil and gas leases. We therefore believe the Nebraska court would concur with the district court in the instant

---

See *Kunc v. Harper-Turner Oil Co.*, 297 P.2d 371, 377 (Okl.1956).

**6.** The fact that there was no production outside the Willson Ranch Unit after 1961 does not by itself terminate the Superior lease. It is established law that production within a unit extends the primary term of the entire lease, both

within and outside the unit. *Wells v. Continental Oil Co.*, 244 Miss. 509, 142 So.2d 215 (1962).

**7.** In this case the district court has appropriately pointed out that if Superior had availed itself of opportunities to farm out its interest, its interest would have also been non-costbearing.

case in holding that the doctrine of implied covenant to further develop is applicable to oil and gas leases in Nebraska.

The rationale underlying the implied covenant to further develop has been stated by the Supreme Court as follows:

> The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.

*Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 281, 54 S.Ct. 671, 674, 78 L.Ed. 1255 (1934).

■ We further note that at this particular point in time the public interest in encouraging the prudent development of oil and gas leases is particularly important. The development of domestic sources of oil will reduce the amount of oil which has to be imported and will thereby redound to the national interest by helping to reduce the deficit trade balance and to render the nation less susceptible to economic dislocations arising from political disturbances in foreign oil producing nations. In this case the district court was justifiably concerned by the failure of Superior to develop. The district court was not persuaded that the reason for failure to develop was primarily economic, and as the court appropriately pointed out, had Superior availed itself of the opportunity to farm out, its interest would have been non-costbearing, as was the lessors' interest. The district court's error, however, was in ordering the cancellation of the Superior lease under the circumstances, where no notice or demand had been served on the lessee prior to lessors' execution of top leases to Christensen. The Schuler-Olsen defendants clearly misconstrued their remedies. They could have easily served their own interest, and in turn the national interest, by giving Superior notice, making demand for production, and subsequently bringing an action to cancel

the lease if Superior failed to respond. They would have thereby accomplished their legitimate and reasonable objective without doing violence to well established principles of oil and gas law.

## II. *The Requirements of Notice and Demand.*

■ An oil and gas lease is a recognized and protected property interest. A cancellation of an oil and gas lease effects a forfeiture of that interest. The law abhors a forfeiture. *George v. Jones*, 168 Neb. 149, 95 N.W.2d 609, 616 (1959). Therefore, an oil and gas lease will not be cancelled for breach of an implied covenant without the lessor having first given the lessee notice of the breach and demanding that the terms of the implied covenant be complied with within a reasonable time. *Robinson v. Continental Oil Co.*, 255 F.Supp. 61, 64 (D.Kan. 1966); *Howerton v. Kansas Natural Gas Co.*, 81 Kan. 553, 106 P. 47, 51 (1910), *rev'd on other grounds*, 82 Kan. 367, 108 P. 813 (1910); *Sapp v. Massey*, 358 S.W.2d 490, 492–93 (Ky.1962); *Cameron v. Lebow*, 338 S.W.2d 399, 402 (Ky.1960); *Hermon Hanson Oil Syndicate v. Bentz*, 77 N.D. 20, 40 N.W.2d 304, 308–09 (1949); *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934, 938–39 (1943); *Hudspeth v. Schmelzer*, 182 Okl. 416, 77 P.2d 1123, 1125 (1938).

■ The rationale underlying the requirements of notice and demand is clear. A lessee, even though he may be in breach of the implied covenant, should be informed of that breach, and should be given an opportunity to redeem himself by commencing further development within a reasonable time. The lessee is in effect given a choice of development or forfeiture. Such a rule is consistent with due process and with the law's abhorrence of forfeitures. It takes nothing away from the lessor because he retains his right to bring an action for forfeiture. Further, it promotes that degree of certainty in the field of oil and gas lease law which enables an attorney to give

a title opinion on the validity of a recorded lease.[8]

The district court recognized the rule that notice and demand are required before an oil and gas lease may be cancelled for breach of the implied covenant of further development, 458 F.Supp. at 1077, but held that equity required cancellation in this case for three reasons: (1) the lease had gone undeveloped for an unreasonable period of time; (2) it would be unfair to the Schuler-Olsens to require notice and demand; and (3) the Schuler-Olsens were not aware of the existence of the Superior lease when they executed the top leases in 1976.

 The concept that notice and demand are waived if there has been no development for an unreasonable period of time does not appear to be supported by the law. The only circumstance under which notice and demand are waived is when the lessee indicates to the lessor, by words or conduct, that he will not commence further development of the lease despite demand made by the lessor. Thus, where lessee states that he has no present intention of drilling at any time in the near or remote future, or claims the right to hold the property without development, or declares that he would not drill even if adequate demands were made, the requirements of notice and demand are waived. *Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 281, 54 S.Ct. 671, 78 L.Ed. 1255 (1934); *Howerton v. Kansas Natural Gas Co.*, 81 Kan. 553, 106 P. 47, 51 (1910), *rev'd on other grounds*, 82 Kan. 367, 108 P. 813 (1910); *Sapp v. Massey*, 358 S.W.2d 490, 493 (Ky.1962). The mere passage of a period of time deemed to be unreasonable should not waive the notice and demand requirement, because a lessor retains the right to test the reasonableness of delay by giving notice and demanding development.

The cases cited by Schuler-Olsens and relied on by the district court in holding that notice and demand are waived when an unreasonable period of time has passed are distinguishable.

In *American Wholesale Corp. v. F. & S. Oil and Gas Co.*, 242 Ky. 356, 46 S.W.2d 498 (1932), the assignee of an oil and gas lease had physically relinquished the leased premises, and had ceased to pump the existing wells and market the oil produced. The lessor took actual possession of the land, wells and equipment. In an action by the lessor to cancel the lease, it was contended by the lessee that there could be no cancellation because no notice and demand had been given the lessee. The court held that no notice was required in these circumstances. The Kentucky court has subsequently characterized this case as one of abandonment. *Cameron v. Lebow*, 338 S.W.2d 399, 407 (Ky.1960).

 "[A]bandonment is the intentional relinquishment of a known right. It is not a ground of forfeiture, but the completed act of abandonment itself terminates the leasehold interest. No court action to cancel is required." *Id.* at 406 (citations omitted). No notice and demand requirement exists when a property interest has been abandoned because there is no longer any interest to protect, it having been voluntarily relinquished. *B. & B. Oil Co. v. Lane*, 249 S.W.2d 705 (Ky.1952). If a lessee has not abandoned the lease, but has been only remiss or dilatory in carrying out his development duties, he is entitled to notice and demand before a forfeiture action is filed. *Id.* at 706. The Schuler-Olsens contended in their counterclaim that plaintiffs had abandoned the Superior lease but the district court made no finding of abandonment and the evidence in the case would not support such a finding.[9]

---

8. The notice and demand required for cancellation of an oil and gas lease because of a breach of an implied covenant must be made before the initiation of the forfeiture action. *Cameron v. Lebow*, 338 S.W.2d 399 (Ky.1960). Cancellation of a lease is never automatically accom-

plished. *Jordan v. Texaco, Inc.*, 297 F.Supp. 1140, 1141 (W.D.Okl.1969).

9. There is evidence that Superior recognized the worth of its lease and was holding it, presumably for a better market.

In *Benedum-Trees Oil Co. v. Davis*, 107 F.2d 981 (6th Cir. 1939), *cert. denied*, 310 U.S. 634, 60 S.Ct. 1076, 84 L.Ed. 1404 (1940), the court allowed a termination, without prior notice and demand, of an oil and gas lease for failure to develop because of the passage of an unreasonable period of time. The situation was unique to that case. The lease was for five years and as long thereafter as oil or gas was produced. It carried no remuneration for the lessor except royalties from production. A gas well was drilled and capped and no royalties were paid. The court characterized the duty to further develop the lease as not a "mere implied covenant" but a condition subsequent. On lessee's failure to develop the property, its grant under the lease terminated automatically with a reverter and right of re-entry to the grantors. *Id.* at 985. The court recognized the general rule that notice and demand are required before a lease may be cancelled because of a breach of the implied covenant of further development, but concluded that the general rule was not applicable under the circumstances of this case. *Id.* at 986.

The rationale of *Benedum-Trees* is not applicable to the facts of this case where the court found that lessors had received royalties of a value of $313,000.00 and were continuing to receive royalties in amounts ranging from $530.00 to $630.00 per month.

■ In *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934 (1943), the court held that the passage of an unreasonable period of time shifted the burden of proof as to profitability of development to the lessee, 137 P.2d at 938, but it was still held that notice and demand are necessary before bringing an action for cancellation. 137 P.2d at 938–39.[10]

The second reason given by the district court for waiving notice and demand is that "to demand further drilling at this juncture would be patently unfair to these defendants." 458 F.Supp. at 1077. As previously noted in this opinion, the Schuler-Olsens were not without recourse or experience in the field. The district court found they were unsophisticated in the field of oil and gas. They may have been unsophisticated but the court also found they were lessors on some 20,000 acres covered by oil and gas leases, and it appears it might be reasonably inferred they had some knowledge in the field. To promote development by serving notice and demand would have produced for them the same royalties as they are now receiving from the working interest defendants. Assuming there might be a loss of bonuses otherwise available from top leases, such loss is hardly more unfair to the Schuler-Olsens than plaintiffs' loss of a lease held by production which they could, under existing law, have reasonably expected could not be taken from them without prior notice and demand.

■ The third reason given for waiving notice and demand is that the Schuler-Olsens had no actual knowledge of the Superior lease, which lack of knowledge the court characterized as a relevant but not determinative consideration in deciding whether notice and demand were required. 458 F.Supp. at 1078. The Schuler-Olsens, as successors in interest to the original lessors, are parties to the lease contract from which they are continuing to receive substantial royalties. Under such circumstances, it is not unfair or inequitable that they should be charged as a matter of law with notice of the existence of the lease contract and the tracts encumbered by it. *See Garsick v. Dehner*, 145 Neb. 73, 15 N.W.2d 235, 238 (1944).

---

**10.** The district court also cited two other cases in support of the proposition that notice and demand are not always required before an oil and gas lease may be cancelled. *McMahan v. Boggess*, 302 S.W.2d 592 (Ky.1957) is inapposite because in that case notice was given to lessees by lessors on three different occasions that unless further development of the leasehold was commenced, cancellation of the lease

would be sought. *Howerton v. Kansas Natural Gas Co.*, 81 Kan. 553, 106 P. 47 (1910), *rev'd on other grounds*, 82 Kan. 367, 108 P. 813 (1910) is also not on point. It does not hold that passage of an unreasonable period of time waives notice and demand, only that demand may be waived when it is obvious that it would be a useless act.

There appears to be no authority in the case law supporting the general equitable considerations upon which the court based its holding that notice and demand were not required in this case. Uncertainty in the established field of oil and gas law should not be introduced on the showing made by the Schuler-Olsens in this case.

### III. *The Working Interest Defendants.*

 The dismissal of plaintiffs' case against the working interest defendants followed logically the court's holding that Superior's lease was cancelled retroactively to a time preceding the execution of the lease to Christensen. The disposition of plaintiffs' case against the working interest defendants is now reopened for consideration and disposition by the district court. The fact that the Superior lease was valid and prior to the Christensen lease does not *ipso facto* make the working interest defendants trespassers and converters as alleged by plaintiffs. Although the Superior lease, as between Superior and its lessors, was held by production after expiration of the primary term in 1959, no affidavit of production was filed under Neb.Rev.Stat. § 57–208, which provides as follows:

> When an oil, gas or mineral lease is given on land situated within the State of Nebraska, the recording thereof in the office of the register of deeds of the county in which the land is located shall impart notice to the public of the validity and continuance of such lease for the definite term therein expressed, but no longer; *Provided,* that if such lease contains the statement of any contingency upon the happening of which the term of any such lease may be extended, such as and as much longer as oil and gas or either is produced in paying quantities, the owner of such lease may at any time before the expiration of the definite term of the lease file with the register of deeds an affidavit setting forth the description of the lease, that the affiant is the owner thereof and the facts showing that the

required contingency has happened. This affidavit shall be recorded in full by the register of deeds, and such record together with that of the lease shall be due notice to the' public of the existence and continuing validity of such lease, until the same shall be forfeited, canceled, set aside or surrendered according to law.

 As previously noted in this opinion, the failure to file an affidavit of production did not affect the contractual relationship between the Schuler-Olsens and plaintiffs. 458 F.Supp. at 1067; *Davis v. Cities Service Oil Co.,* 338 F.2d 70, 73 (10th Cir. 1964); *Cities Service Oil Co. v. Adair,* 273 F.2d 673, 676 (10th Cir. 1959); *Storm v. Barbara Oil Co.,* 177 Kan. 589, 282 P.2d 417, 425 (1955).[11] Section 57–208 is a notice statute to the public. It is intended to afford prospective purchasers a means of discovering from the public records the existence of outstanding interests or claims which might affect their title. 273 F.2d at 677. The 1949 lease did not provide notice to subsequent purchasers of its existence after the expiration of the primary term. A purchaser after August 1, 1959, who relied upon the public records and who did not otherwise have actual or constructive notice of the Superior lease would therefore be a subsequent good faith purchaser for value, and his leasehold interest would be prior to that of the lessees under the Superior lease. *See* 273 F.2d at 677; *Grand Island Hotel Corp. v. Second Island Development Co.,* 191 Neb. 98, 214 N.W.2d 253 (1974).

If the working interest defendants did not have actual or constructive notice of the production of oil, which production, as between Superior and the Schuler-Olsens, preserved the validity of the lease, they are bona fide purchasers for value and plaintiffs' recourse is against the Schuler-Olsens. If, however, the working interest defendants had actual or constructive notice of plaintiffs' interests, they would be trespassers and converters and would be liable to

---

11. *Davis, Adair* and *Storm* interpret Kan.Stat. § 55–205, which is substantially identical to

Neb.Rev.Stat. § 57–208. There is no Nebraska case law interpreting § 57–208.

plaintiffs for damages and such other relief as may be appropriate.[12]

### IV. *Order.*

█ The orders of the District Court cancelling the Superior lease and dismissing plaintiffs' action against the working interest defendants are reversed, and the judgment entered on the orders is vacated. The case is remanded for disposition consistent with this opinion.[13]

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the District Court correctly terminated the portions of the Superior lease outside the Willson Ranch Unit because Superior breached its implied covenant to further develop.

I agree with the majority that this action is governed by Nebraska law and that the Nebraska courts would apply the implied covenant to further develop. I do not agree that the District Court erred in holding that notice was not required prior to the termination of the lease.

The requirement of notice is grounded in equitable principles and is designed to prevent unnecessary forfeitures by informing a lessee of a breach of an implied covenant and giving him an opportunity to repair the breach within a reasonable time. *See generally* 5 E. Kuntz, A Treatise on the Law of Oil and Gas § 58.4 (1978); 3 W. Summers, The Law of Oil and Gas § 469 (perm. ed. 1958). If, however, the lessee already knows that he has breached the implied covenant and within a reasonable time thereafter does not correct it, or indicates in some manner that he is not going to undertake further development, the notice requirement is dispensed with because its purposes have already been fulfilled. *See Benedum-Trees Oil Co. v. Davis,* 107 F.2d 981, 986 (6th Cir. 1939), *cert. denied,* 310 U.S. 634, 60 S.Ct. 1076, 84 L.Ed. 1404 (1940); *American Wholesale Corporation v. F. & S. Oil & Gas Co.,* 242 Ky. 356, 46 S.W.2d 498, 500 (1932). In such circumstances, requiring the lessor to give notice would be a useless act. Thus, notice is required only where it is equitable to do so in light of the policies behind the requirement.[1] *Cf. Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 938–939 (1943).

In this case, Superior knew that it had breached the implied covenant to further develop and did not correct it within a reasonable time. Consequently, notice would serve no useful purpose.

The implied covenant to further develop requires the lessee to maintain an active

---

**12.** We note that under Nebraska law actual physical possession of property constitutes constructive notice to subsequent purchasers. *Grand Island Hotel Corp. v. Second Island Development Co.,* 191 Neb. 98, 214 N.W.2d 253, 257 (1974).

**13.** It appears from the record in the case that Christensen may have made a good faith but mistaken determination that the Superior lease was not held by production. If it is determined that the working interest defendants had actual or constructive notice of the production from the Superior leasehold and the resulting validity of the Superior lease, under the circumstances of the case equity may require that they recover their drilling and production costs.

**1.** Considerable confusion has arisen in this area because many courts have framed the issue in terms of the theory on which relief is sought in the forfeiture suit. E. KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 58.4 (1978). Where the theory relied on is breach of the implied covenant to further develop, the courts ordinarily require notice. *E. g., Sapp v. Massey,* 358 S.W.2d 490, 493 (Ky.1962). Where the theory relied on is abandonment, the lessor need not give notice. *E. g., American Wholesale Corporation v. F. & S. Oil & Gas Co.,* 242 Ky. 356, 46 S.W.2d 498 (1932). In the case of "true" abandonment, the lessee has the intent to abandon the lease and physically relinquishes it. *Id.* Obviously notice would serve no purpose in such situations. Many courts have, however, taken an expansive view of abandonment and have inferred abandonment where the lessee has been in default for an unreasonable period of time without regard to the lessee's actual intent. *See Smyth v. Koplin,* 294 S.W.2d 525 (Ky.1956). Notice appears to have been dispensed with in this latter type of abandonment case because under all the circumstances, it was reasonable to assume that the lessee knew of the breach of the implied covenant but had refused to correct it.

Although some courts have recognized that this latter type of case merely represents an application of the implied covenant to further develop, *see Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934 (1943), this does not undercut the rationale for not requiring notice.

interest in the lease after an exploratory well has been drilled. E. KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 58.1 (1978). Thus, after the lease is held by production, a lessee may not, consistent with its duty under the implied covenant, hold the remaining portions of the leasehold for speculative purposes. As noted by the court in *Doss Oil Royalty Co. v. Texas Co., supra,* 137 P.2d at 938:

> The implied covenants of a lease require the lessee to develop and operate the lease with due regard for the lessor's interest therein as well as his own. Neither the lessor nor the lessee is the arbiter of the extent to which, or the diligence with which, the lessee shall proceed, but such question is committed to the sound discretion of the courts to be determined from the facts and circumstances of each case. To permit the lessee to hold the lease for an unreasonable length of time for merely speculative purposes, is to allow him to protect his own interest and to disregard the interest of the lessor. If conditions do not indicate to him that further development will be profitable, it is but fair that, after a reasonable time has expired, he surrender the undeveloped portions of the lease and allow the lessor to procure development by others or assume the burden of showing why in equity and good conscience the undeveloped portion should not be cancelled so that the owner may, if possible, get it developed by others. (Citation omitted.)

Superior made a conscious decision not to develop the lease for speculative purposes and, in doing so, it intended to breach the implied covenant. Prior to 1960, Superior possessed geological evidence which indicated that further development of the lease was warranted. Superior did not act on this information. In addition, it refused to farm out any portion of its lease. Frank Baumgartner, for example, requested a farm out in March, 1960, on the same acreage where the Christensen well was successfully drilled seventeen years later. In rejecting the farm out, Superior noted in an inter-office memorandum:

> As the Olsen lease is held by production, I can see no reason at this time to grant an additional farmout [sic] to Frank Baumgartner. He still has the opportunity to earn additional acreage in Sec. 22. I feel we have moved too fast in this immediate area, as we have farmed out apparently good oil land to both British American and Baumgartner within the past year.
>
> As we are under no strain from a date standpoint, we can afford to await further drilling on acreage already farmed out.

It is difficult to see how Superior can claim that it is inequitable to terminate its lease without notice, or that it was surprised by the actions of the Schuler-Olsens. Once Superior made the decision to hold the lease for speculative purposes, it knowingly assumed the risk that the lessor would terminate the lease.[2] Notice would serve no purpose in this case except to encourage such conduct in the future.

I also conclude that the District Court did not abuse its discretion in considering other equitable factors in its decision to dispense with the notice requirement. The District Court noted that this is an unusual case because additional, successful drilling had already taken place. Generally, the result of notice will be either development or forfeiture of the lease. Either result will satisfy the lessor under normal circumstances and the lessee can proceed with a course of action which is economically feasible. Although the evidence suggests that but for the new well Superior would have continued to sit on its rights,[3] it is obvious that Superior presently desires to develop the lease. Allowing it to cure its breach at

---

**2.** The evidence indicates that Superior did not develop the lease because it had hoped for an increase in oil prices.

**3.** In its attempt to show that it did not breach the implied covenant to further develop, Superior introduced evidence indicating that further drilling was pointless. But for the new well, Superior would probably have relied on this evidence to justify a decision to refrain from any future development.

this time would, however, unduly reward its dilatory practices because any new production would stem not from their own efforts but from the efforts of the Schuler-Olsens and the working interest defendants.

An additional factor considered by the District Court was that the Schuler-Olsens had no actual[4] or constructive knowledge of the Superior lease. The District Court stated that

> [w]hile such unawareness does not usually excuse a lessor from the binding obligations contained within a pre-existing oil and gas lease, the lack of knowledge is relevant in a consideration of its ameliorative effect on any need for notice to a lessee regarding violation of an implied covenant. This is especially true where the ignorance of a lessor is attributable in large measure to the lack of lease development by a lessee.

458 F.Supp. at 1077–1078.

Thus, the Schuler-Olsens could not have given Superior notice of its breach of the implied covenant prior to the development of the new well. Moreover, Superior is responsible in part for the Schuler-Olsens' lack of knowledge since it did not file an affidavit of production.

The majority indicates that an affirmance of the District Court would introduce uncertainty in the oil and gas law field. I disagree, noting the flexible nature of equitable rules and the strong dependence on the particular factual situation to which the rules are being applied. By reversing the District Court, we sanctify Superior's decision to hold the lease for speculative purposes to the detriment of the public.

Insofar as I conclude that the District Court correctly decided that notice was unnecessary under the particular facts of this case, it is necessary to decide whether the finding that Superior breached the implied covenant to further develop is clearly erroneous. I conclude that it is not. The evidence upon which the District Court based

its decision is carefully detailed in 458 F.Supp. at 1072–1074, and no useful purpose would be served in repeating it here. The record shows that there was abundant geological evidence available to Superior indicating that profitable drilling prospects existed on the Superior lease, but that Superior declined to take advantage of them.[5]

Given the equitable considerations present in this case, including Superior's decision to hold the lease for speculative purposes, I conclude that it was not an abuse of the District Court's discretion to cancel the Superior lease as to all lands other than those in the Willson Ranch Unit rather than to order a less drastic remedy such as a conditional decree of cancellation.

I would affirm the District Court.

---

4. The District Court's finding in this regard is not clearly erroneous.

5. Since I would find that Superior breached the implied covenant to further develop, I would also affirm the dismissal of the case against the working interest defendants.